AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| United States of America | |
| v. | Case No. 20-MJ-5162 |
| Juan C. Padua and Michael Vasquez | |
| *Defendants* | |

*[FILED JUL 2 4 2020, MARY C. LOEWENGUTH, CLERK, WESTERN DISTRICT OF NY]*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about July 23, 2020, in the Western District of New York and elsewhere, the defendants, **Juan C. Padua** and **Michael Vasquez** did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to commit the following offenses, that is: to possess with the intent to distribute, and to distribute, 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), all in violation of Title 21, United States Code, Section 846.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

_____
*Complainant's signature*

CHRISTOPHER WISNIEWSKI
Special Agent
Drug Enforcement Administration
*Printed name and title*

Sworn to and signed telephonically.

Date: July 24, 2020

_____
*Judge's signature*

City and State: Buffalo, New York

HONORABLE MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

STATE OF NEW YORK   )
COUNTY OF ERIE       )   SS:
CITY OF BUFFALO      )

**CHRISTOPHER WISNEIWSKI**, being duly sworn, deposes and says:

1. I am a Special Agent of the United States Drug Enforcement Administration (DEA) and have been so employed since September of 1998. I am currently assigned to the Buffalo Resident Office in Buffalo in Buffalo, New York. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2. My official duties include investigating criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848. I have received special training in the enforcement of laws concerning controlled substances found in Title 21 of the United States Code. Some of the specialized training I have received includes, but not limited to, classroom instruction concerning narcotics smuggling, money laundering investigations, conspiracy, and complex investigations. I have been involved in various types of electronic surveillance, as well as interviewing and debriefing of defendants, witnesses, informants, and others who have

knowledge of the distribution and transportation of controlled substances, and the laundering and concealing of proceeds from drug trafficking.

3. I have conducted and participated in numerous investigations as a Special Agent that resulted in the seizure of marijuana, prescription pills, cocaine, methamphetamine and/or heroin/fentanyl, proceeds, assets and other types of evidence. I am familiar with and have participated in all of the normal methods of investigation, including but not limited to undercover, visual and video surveillance, questioning of witnesses, controlled deliveries, use of search and arrest warrants, management and use of informants, and electronic surveillance.

4. I make this Affidavit in support of an application for a Criminal Complaint charging **Juan Carlos PADUA**, and **Michael VAZQUEZ-PUYARENA** with conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), all in violation of Title 21, United States Code, Section 846. This affidavit is submitted for a limited purpose, and as a result, I have not included details of every aspect of this investigation. I am thoroughly familiar with the information set forth in this affidavit as a result of my personal participation in the investigation, discussions with other DEA agents and task force officers, or statements provided by other law enforcement personnel including Postal Inspectors and Erie County Sherriff's Deputies and Detectives, which have been reported to me, and examination of various documents and records in this investigation. Based upon the information generated during this investigation, surveillance conducted by law enforcement officers, a controlled delivery, and

2

subsequent execution of a Federal Search Warrant, there is probable cause to believe that **Juan Carlos PADUA**, and **Michael VAZQUEZ-PUYARENA** conspired to possess with intent distribute 500 grams or more of a mixture and substance containing cocaine.

5. This investigation was initiated following a referral from the U.S. Postal Inspection Service (USPIS) in Buffalo, New York to members of the DEA Buffalo Resident Office. The United States Postal Service interdicted a U.S. Postal Service Priority Express Mail parcel addressed to "Natalia Padua, 174 Germain Street, Upper, Buffalo, NY 14207. The parcel bore a return address of "Maribel Rivera Padua 2da Ext. Santa Elena A-6 Calle Orquidea Guayanilla P.R. 00656". The Express Priority Mail parcel also bore USPS tracking number EJ 363 277 310 US, and was described as a US Postal Service cardboard box measuring approximately 8 1/2" x 11" x 5 1/2", and weighing approximately 5 lbs 2 oz. (Hereinafter the "Subject Parcel") The mailing was prepaid and had an expected delivery date of July 22, 2020.

6. The Subject Parcel shared additional characteristics and attributes common to other parcels known to have contained controlled substances. Specifically, the parcel was sent via Priority Express Mail which bore a USPS Tracking Number, which can be used for tracking purposes, and a handwritten address. In addition, a check of a commercial databases by DEA investigators revealed that the recipient name appeared to be fictitious, as it could not be associated with the Target Residence. Finally, the parcel came from Puerto Rico, a known source location for illicit narcotics trafficking. A utilities check revealed that a that Juan Padua currently subscribed to utilities at 174 Germain, in the upper apartment.

He had subscribed to utilities at that address since August 1, 2019. The subjects associated with these locations did not match the recipient name on the Subject Parcel.

7.   On or about July 22, 2020, a federal search and seizure warrant was obtained for the Subject Parcel, signed by the Honorable Michael J. Roemer, U.S. Magistrate Judge, see 20-mj-5158. As a result of the warrant's execution, U.S. Postal Inspectors discovered that the Subject Parcel contained, inter alia, toys, coloring books, paper plates, napkins and a Nickelodeon slime box that was wrapped in red wrapping paper with multi-colored stars and Spanish writing that further contained a large, white, brick-like substance that was comprised of a loosely packed white powder. Field tests conducted by USPIS Inspector Brendan Jaffe indicated the presence of both cocaine and Fentanyl in the substance. The recovered contraband substance weighed approximately 2 lbs. and 5.05 oz. Cocaine is listed as a Schedule II Controlled Substance, and is illegal to import, possess and distribute. Based on my training and experience, and the experience of the other DEA investigators, I believe that this quantity of cocaine is consistent with large-scale drug trafficking and is a distribution quantity, not an amount equivalent to personal use.

8.   On July 23, 2020, your affiant obtained an anticipatory search and seizure warrant for 174 Germain Street, Upper Apartment, Buffalo, NY 14207. On that same day, a transmitting device was installed within the Subject Parcel by members of the USPIS.

9.      On July 23, 2020, DEA and Postal investigators established surveillance in the vicinity of 174 Germain Street, Upper Apartment, Buffalo, NY. DEA SA David Turner observed that the storm door to the location was closed, but that the exterior door leading to the upper apartment was open. SA Turner observed a hand written sign affixed to the storm door that read, "Please leave packages in hallway. Thank you." The undercover Postal Inspector was then sent to 174 Germain Street to deliver the Subject Parcel. The undercover Inspector arrived and placed the parcel inside of the storm door, as directed by the signage, and departed the area without incident. Shortly thereafter, SA Turner observed a male wearing shorts come down stairs, retrieve the Subject Parcel and close exterior door. Surveillance was maintained at 174 Germain.

10.     A few minutes later, a black Dodge Ram truck bearing NY registration (HTF1649) was observed turning onto Germain Street. That vehicle was occupied by two Hispanic males. The vehicle parked in the vicinity of 174 Germain Street and the passenger, later identified as **Michael VAZQUEZ-PUYARENA** exited the vehicle and approached 174 Germain Street. According to SA Turner, VAZQUEZ appeared to linger in front of the residence for a short while using his cellular telephone. Insp. Jaffe advised your affiant that VAZQUEZ was the same person he observed on that same day earlier in the morning standing in front of 174 Germain Street and speaking to someone in the upper apartment. VASQUEZ then entered 174 Germain Street, Upper Apartment via the far left door.

11.     A short time later, Agents received a tone indicating that the Subject Parcel was opened. The Dodge Ram and the driver were detained several houses south of the Target

5

Residence and then, once it was secured, Agent's began to approach 174 Germain Street. The search warrant was then executed at 174 Germain Street, Upper. Investigators conducting perimeter security duties at the rear of the residence observed a male in the upper apartment near open windows making furtive movements. Officers and Agents loudly announced their presence and advised the unidentified male to stop and put his hands up. The male simply retreated into the upper apartment. Another group of investigators, simultaneously approached the front door. They knocked and announced their presence. After a reasonable time, they began to force entry into the upper apartment. At that time, Juan Carlos PADUA came to the door and opened it. He was immediately detained and placed in handcuffs. Your affiant asked PADUA who was inside the residence. In sum and substance, PADUA replied that his 10 year old son was in the residence. Your affiant then asked if anyone else was in the residence, if PADUA kept dogs in his residence or if he had any weapons inside and PADUA provided a negative response. Agents called out to the boy and he came downstairs without incident. A security sweep was then conducted and VAZQUEZ was encountered inside and detained.

12. A search of 174 Germain Street, Upper apartment revealed that the Subject Parcel was not contained therein and a broader search of the property, as well as neighboring properties was commenced. The aforementioned Nickelodeon slime box that was wrapped in red wrapping paper with multi-colored stars and Spanish writing that originally contained the seized drugs was located in a neighboring back yard. This indicated to your affiant that VAZQUEZ and/or PADUA opened the parcel, likely found the technical device inserted into the parcel by law enforcement and/or observed the Agents detain the Dodge Ram and

approach the residence, and then attempted to destroy and remove evidence to thwart law enforcement efforts. This activity on their part also demonstrates some level of knowledge as to the fact that the Subject Parcel contained some type of contraband or illegal items. PADUA, in sum and substance, eventually told Agents that VAZQUEZ may have hidden the parcel in the rafters in the attic. VAZQUEZ separately told Agents, in sum and substance, that he hid the parcel in the rafters in the attic. A search of the attic led to the recovery of the Subject Parcel, which was torn up and secreted in the rafters, as described. Additional search efforts led to the recovery of the USPIS technical device, which was recovered from the roof top of the rear porch/stair structure of 174 Germain Street. Insp. Jaffe advised your affiant that the government technical device was broken and or destroyed by PADUA and/or VAZQUEZ. Both PADUA and VAZQUEZ were transported to the DEA Buffalo RO for processing.

13. During a post-arrest, post-*Miranda* interview, VAZQUEZ told your affiant, in sum and substance, that he was not the ultimate recipient of the Subject Parcel and that he was to receive approximately $5,000.00 USC or less for retrieving the Subject Parcel and delivering it. He also advised that PADUA was to receive $1,000.00 for allowing the use of his address to receive the Subject Parcel, but that PADUA did not know anything about the drug distribution scheme.

WHEREFORE, based on the foregoing, your affiant respectfully submits that probable cause exists to believe that **Juan Carlos PADUA** and Michael **VAZQUEZ-PUYARENA** violated Title 21, United States Code, Section 846, conspiracy to possess with

intent to distribute 500 grams or more of a mixture and substance containing cocaine, a Schedule II controlled substance, and requests that a criminal complaint as aforesaid is issued.

_____
CHRISTOPHER WISNIEWSKI
SPECIAL AGENT
Drug Enforcement Administration

Sworn to and signed telephonically
this 24th day of July, 2020.

_____
HONORABLE MICHAEL J. ROEMER
UNITED STATES MAGISTRATE JUDGE