UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

        v.

JUAN PADUA,
                Defendant.

_____

**20-CR-191-LJV**

**NOTICE OF MOTIONS**
***IN LIMINE* BY DEFENDANT**

| | |
|---|---|
| **MOTION BY:** | Fonda Dawn Kubiak, Assistant Federal Public Defender. |
| **DATE, TIME & PLACE:** | Before the Honorable Lawrence J. Vilardo, United States District Judge, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York, on October 13, 2021 at 11:00 a.m. |
| | In addition, the defense intends to submit reply papers in reply to the government's response to these motions. |
| **SUPPORTING PAPERS:** | Memorandum of Assistant Federal Public Defender Fonda Dawn Kubiak, dated September 20, 2021. |
| **RELIEF REQUESTED:** | An Order of this Court for the following relief: |

I.      Suppress Mr. Padua's Post-Arrest Custodial Statement after his Assertion Sixth Amendment Right to Counsel;

II.     Preclude testimony, comments or arguments regarding Mr. Padua's post-arrest assertion his Fifth and/or Sixth Amendment rights;

III.    Preclude the Government from admitting evidence or testimony from any witnesses regarding prior bad acts, and Response to Government's Motion to Introduce a Prior Bad Acts under F.R.E. 404(b);

IV.  Denying Government's Motion to Preclude Defendant from Introducing Self-Serving Hearsay through Cross-Examination of Government Agents; in the alternative granting Mr. Padua's Motion to Admit his Statements Against Penal Interest to Exculpate;

V.  Preclude the Government from admitting evidence or testimony from any witnesses regarding: (a) Mr. Padua's "Threats" regarding co-defendant, Michael Vasquez; Mr. Padua's prior drug dealing as contained in his videotaped interrogation, and (c) the fact he was a victim of a shooting pursuant to F.R. E. 404(b);

VI.  Preclude Cross-Examination of Mr. Padua Regarding Certain Prior Convictions Pursuant to F.R.E., 609(b)

VII.  Preclude Statements By Non- testifying Co-Conspirators; prohibit the Government from introducing Co-Defendant, Michael Vasquez's, Statement; and Severance;

VIII.  Preclude the Government from introducing Co-Defendant, Michael Vasquez's Plea Allocution in the event Mr. Vasquez enters a guilty plea prior to the start of this trial;

IX.  Conduct a Pretrial Conspiracy Hearing

X.  Preclude Government from Conditionally Admitting Evidence;

XI.  Preclude Cellphone Extraction and Governments Expert Witness Due To Government's Failure To Comply With Rule 16 and Obligation To Timely De-encrypt and Produce Electronic Evidence;

XII.  Preclude Any Law Enforcement Fact Witnesses From Testifying As An Expert;

XIII.   Reserving the right to file additional motions; and

XIV.   Such other and further relief as this Court deems just and fair.

DATED:                          Buffalo, New York, September 20, 2021.

Respectfully,

**/s/ Fonda Dawn Kubiak**
Fonda Dawn Kubiak
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
fonda_kubiak@fd.org
*Counsel for Defendant Juan Padua*


**/s/ Carla Benz**
Carla Benz
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
carla_benz@fd.org
Counsel for Defendant Juan Padua


**/s/ Timothy P. Murphy**
**Timothy P. Murphy**
Assistant Federal Public Defenders
Federal Public Defender's Office
300 Pearl St., Suite 200,
Buffalo, NY 14202
(716) 551-3341, (716) 551-3346 (Fax)
Timothy_Murphy@fd.org
*Counsel for Defendant, Juan Padua*

**TO:**    Charles Watkins , Assistant United States Attorney
P. Richard Antoine, Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                                    **20-CR-191-LJV**

        v.

                                   **AFFIRMATION**

JUAN PADUA,

           Defendant.

_____


      **FONDA DAWN KUBIAK**, affirms under penalty of perjury, that I am an Assistant

Federal Public Defender and represent Mr. Padua in this case.  I submit this affirmation in

support of various pre-trial rulings for the trial scheduled to commence on October 25, 2021.

### Procedural History and Facts

      On July 22, 2020, members of the United States Postal Inspection Service (USPIS)

executed a federal search warrant on a suspicious parcel. The parcel contained approximately a

kilogram of cocaine (1003.2 grams). The parcel was addressed to "Natalia Padua, 174 Germain

Street, Upper, Buffalo, N.Y."  After the execution of the parcel search warrant, there was also a

transmitter placed inside of the repackaged parcel that would emit a notification to the agents upon

the parcel being opened, the seized cocaine was removed. The parcel was repackaged with "sham"

replacing the cocaine.

      On July 23, 2021, Juan Padua was at his house on 174 Germaine Street in the City of

Buffalo, New York.  Around 2:27 p.m., DEA then set up surveillance on the target residence while

the USPIS delivered the parcel. There was a storm door on the target residence. There was a sign

written on the storm door that read "please leave packages in the hallway. Thank you." The parcel

was placed inside the storm door.  Shortly after the parcel was delivered, a black Dodge Ram

pickup truck arrived at the house. Michael Vasquez exited the passenger seat of the truck and walked onto the porch of the house, and then entered.  The agents then proceeded to the target residence, knocked on the door and announced their presence. Juan Padua came downstairs from the upper apartment and answered the door. He was immediately taken into custody. Once the agents made entry into the upper apartment, they encountered Michael Vasquez. He was taken into custody. The agents then searched the home and discovered the contents of the parcel. The contents (the sham) were discovered in the backyard of the residence next door. The actual parcel was found in the attic. Both Mr. Pauda and Mr. Vasquez were arrested. Both are charged in a two count Indictment filed on December 9, 2021, (Docket No. 13), charging Juan Padua with Narcotics Conspiracy in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B), all in violation of Title 21, United States Code, Section 846, and Attempt to Possess with Intent to Distribute 500 Grams or More of Cocaine in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

Presently, both defendants have persisted in their pleas of not guilty and deny the existence of a narcotics conspiracy, deny that they attempted to possess with intent to distribute 500 grams or more of cocaine and further deny that the actions alleged by the government were willful, knowing and intelligent as required by law.  As set forth below, Mr. Padua objects to the Government's Motions in Limine (Dkt. No. 71), and submits additional Motions *In Limine* to address several evidentiary and pre-trial matters.

## I.    Suppression of Mr. Paduas Post- Arrest Statement Following his Invocation of Counsel

In its trial brief, the Government indicates that Mr. Padua made a statement at the time of his arrest (Dkt. No. 68, Govt. Ex. 10), which will be recounted by Government witnesses (Docket No. 70, pp.15, 16).  They argue that this statement is not hearsay pursuant to Federal Rule of

Evidence 801(d)(2)(A), is highly relevant pursuant to Rule 401, and is not unduly prejudicial pursuant to Rule 403. Accordingly, they submit that this statement should be admitted in their case-in-chief.

Mr. Padua objects, and hereby moves in *limine* to suppress his post-arrest statements as they were made while he was in custody after invoking his right to counsel. Mr. Padua requests this Court suppress this statement and preclude the Government from admitting it in its case-in-chief at trial. Mr. Padua maintains that that there are no issues of fact that would require additional testimony at a hearing in order for this Court to make a determination on the invalidity of this statement. In the event this Court determines that a pretrial hearing is necessary, we submit that it would be very brief and could be handled at the time of the final pretrial conference.

This Court is asked to consider an important constitutional issue. Mr. Padua invokes his right to counsel (post-*Miranda*) at approximately 5 minutes and 43 seconds into his videotaped interrogation with the DEA on February 21, 2021. Specifically, Mr. Padua states that "that's what I mean-that's why maybe I should have a lawyer to see if it can be justified…doesn't make any sense." In response, the Agent says "if you don't want to talk that's fine-but lying just makes it worse-so don't do that." Mr. Padua then says "how do I not talk then." At approximately 7 minutes and 26 seconds into the interrogation, both DEA agents present acknowledged on videotape that Mr. Padua had invoked his right to counsel. All statements made after that point should be suppressed. Specifically, Special Agent Christopher Wisniewski turned to Special Agent David Turner and say "we need to stop-he wanted a lawyer."

This suppression motion falls under Federal Rule of Criminal Procedure 12(b)(3)(C) as a motion that must be made before trial. Though the Government may argue that this application may be deemed as untimely by this Court, the issue should still be considered as good cause exists for resolving this pertinent issue. *See*, Fed. R. Crim. P. 12(c)(3). To begin with, the defense

seeks no strategic advantage in making this motion at this time. The defendant's statements made in the videotaped interview have simply been reevaluated by the defense in light of the government's numerous September 13, 2021 filings as well as the Magistrate Judges denial of Mr.Padua's pretrial motion to preclude statements of non-testifying co-conspirators and severance. See Dkt. Nos. 36 and 49.  Secondly, defense counsel has an ethical obligation to preserve and litigate this issue on behalf of Mr. Padua. Third, the resolution of this issue is largely a legal determination to be made upon review of the approximately 16-minute videotape in question. It does not appear that live testimony will be warranted.  All that the Court must determine is whether Mr. Padua made an unambiguous invocation of counsel. The Court's valuable resources will thus not be unduly burdened. Fourth, the government has not been prejudiced by the timing of this motion. The trial in this matter is not scheduled to commence until October 25, 2021, more than a month away. *See*, Dkt. 56, at p. 1 (pretrial scheduling order).

Finally, there is great merit to this motion, as it is black letter law that statements following the unambiguous invocation of counsel must be suppressed. *See*, *Davis v. United States*, 512 U.S. 452, 458 (1994), citing *Edwards v. Arizona*, 451 U.S. 477, 484-485 (1981) (recognizing that if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation).  As the Supreme Court has further observed:

> This "second layer of prophylaxis for the *Miranda* right to counsel," … is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," … To that end, we have held that a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present.

*Davis*, 512 U.S. at 458 (internal citations omitted); *see also*, *United States v. Gonzalez*, 764 F.3d 159, 165-166 (2d Cir. 2014). As both experienced DEA agents believed Mr. Padua had invoked his right to counsel during the February 21, 2021 interrogation, this Court is likely to agree with

the defendant's argument for suppression. *See*, *Davis*, 512 U.S. at 459, citing *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991) (observing that invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney").

In sum, all post-invocation statements made by Mr. Padua on February 21, 2021 should be suppressed.

### II.    Preclude testimony, comments or arguments regarding Mr. Padua's post-arrest assertion his Fifth and Sixth Amendment rights

Mr. Padua moves *in limine* to preclude the Government from conveying to the jury, Mr. Padua's post-arrest assertion his of Fifth and/or Sixth Amendment rights through direct examination, cross-examination, opening statements, or closing argument.  It is well-established that a defendant's post-arrest silence, after *Miranda* warnings have been provided, is not admissible in the prosecution's case-in-chief, or for impeachment purposes.  *See Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965), ("[T]he Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."); *Doyle v. Ohio*, 426 U.S. 610, 618-19, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976) (holding use of a defendant's post-arrest silence, after *Miranda* warnings have been provided, to impeach the defendant violates due process).

### III.    Preclude the Government from admitting evidence or testimony from any witnesses regarding prior bad acts, and Response to Government's Motion to Introduce a Prior Bad Acts under F.R.E. 404(b)

As set forth in more detail below, Mr. Padua also moves to preclude any impeachment on the comments made by Mr. Padua during his DEA videotaped interrogation on February 21, 2021, specifically around 12 minutes and 21 seconds into the interview. *See* Dkt. No. 68, Govt.

Ex. 10.  At that time, Mr. Padua made a passing reference upon showing law enforcement a scar from a prior robbery from when he purportedly used to sell drugs at some point in time. *See* Dkt. 71, at p. 2 (F.R.E. 404(b) notice). However, Mr. Padua then immediately followed up with another comment denying he that sold drugs. These ambiguous and unreliable comments were made approximately 7 minutes after Mr. Padua had invoked his right to counsel (which occurred approximately 5 minutes and 43 seconds into the interrogation). As otherwise indicated herein, counsel is moving to suppress all of Mr. Padua's statements following his invocation of counsel.

Moreover, the probative value of such a passing comment does not substantially outweigh its obvious prejudicial effect in a drug prosecution such as ours.  In his August 4, 2020 discovery demand letters, Mr. Padua requested disclosure pursuant to Rule 404(b) of the Federal Rules of Evidence.  *See Dkt. No. 78,* **Exhibit A**.  Prior to the Government's September 13, 2020 trial submission (Dkt. No. 71), the government failed to respond to prior requests for its 404(b) notice.  In the Government's *Motion In Limine*, it now sets forth the exact nature of the "prior act" evidence that the government seeks to introduce.  Dkt. No. 71.

The Government now seeks to introduce a single, five-second statement made by Juan Padua selected from a recorded interrogation by DEA agents. Fourteen minutes into that interrogation, and after invoking his right to counsel, Mr. Padua is asked by one of the agents to identify any scars on his body. Mr. Padua stands up and shows the agents a scar on his chest from a bullet wound that entered his body through his chest and exited through is back. The following conversation transpires between Mr. Padua and the agent:

> "Agent: What was that from?
> Mr. Padua: I was in a robbery, back when I used to sell drugs, guy robbed me, ever since then I don't sell drugs." 14:16 {Dlt. No. 68, Govt. Ex. 10}.

This stand-alone statement in a 16-minute long interrogation filled with otherwise completely exculpatory statements made by Mr. Padua does not pass muster under the

applicable test for admissibility of other bad acts under F.R.E. Rule 404(b). The government's

motion should therefore, be denied. It is well-settled that the admission of character evidence

to prove a defendant's propensity is strictly prohibited. Indeed, Rule 404(b) *only* permits the

limited admission of "prior bad acts" if the evidence satisfies some other proper evidentiary

purpose, such as proving "motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident." FED. R. EVID. 404(b). Courts have recognized that:

> The problem with propensity evidence is that it "weigh[s] too much with the
> jury [because it] over persuade[s] them as to prejudge one with a bad general
> record and den[ies] [the defendant] a fair opportunity to defend against a
> particular charge," without limitations based on whether the charged and
> uncharged acts are the same.

*United States v. Smith*, 725 F.3d 340, 347 (3d Cir. 2013) (quoting *Michelson v. United States*,

335 U.S. 469, 476 (1948)).  The purpose of Rule 404(b), therefore, is to protect an accused's

constitutional right to a fair trial from the tendency that character evidence has to be given undue

weight by the jury.

The Supreme Court has established, and the Second Circuit has adopted, a four-prong test

to determine whether evidence of the other crimes, wrongs or acts is admissible under Rule 404(b).

*See Huddleston v. United States*, 485 U.S. 681 (1988); *United States v. Scarfo*, 850 F.2d 1015 (3d

Cir.), *cert. denied*, 488 U.S. 910 (1988). To be admissible, the proponent of the Rule 404(b)

evidence must persuade the court the proffered evidence: (1) the prior act evidence was offered

for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of

the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court

administered an appropriate limiting instruction." *Depree*, 870 F.3d at 78, citing *Garcia*, 291 F.3d

at 136; *see also*, *United States v. Krug*, 2019 U.S. Dist. Lexis 96894, at *9-10, 2019 WL 2416803

(WDNY 2019), citing *United States v. Cadet*, 664 F.3d 27, 33 (2d Cir. 2011).

Accordingly, where the Government asserts that it intends to offer other act evidence for such proper purposes, "this does not end the inquiry. . . . Rather, the court must also determine whether the proffered evidence is relevant to that proper purpose under Federal Rules of Evidence 401 and 402, and if so, whether that probative value is substantially outweighed by any risk of unfair prejudice under Federal Rule of Evidence 403." *United States v. Kahale*, 789 F. Supp. 2d 359, 385 (E.D.N.Y. 2009).  As to relevance, the proponent must demonstrate that the other acts are "'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the knowledge [and intent] inference[s] advocated by the proponent of the evidence.'" *United States v. Afjehei*, 869 F.2d 670, 674 (2d Cir. 1989) (quoting *United States v. Peterson*, 808 F.2d 969, 974 (2d Cir. 1987)). In light of these principles, the proposed testimony should be precluded.

The only purpose the Government now moves to introduce this statement at trial is for propensity, offered for the sole reason to attempt to paint Mr. Padua as a man who at one time may have sold drugs and therefore must be in a conspiracy with Michael Vasquez to sell drugs in this case. This is clear from the fact that the facts and circumstances surrounding any prior alleged drug dealing are completely unknown and speculative. While the Government seeks introduction of the statement on the basis that it "helps prove the defendants' motive, intent, plan and knowledge of their conspiracy and attempted possession with the intent to distribute the cocaine," the argument it empty of any analysis or argument to support that position. The Government simply goes on to state that "this evidence helps prove the defendants' true intent – to possess with the intent to distribute, and to distribute, cocaine" or, in other words, that Mr. Padua stated he used to sell drugs so it must be so that he possessed drugs with the intent to sell them in this case – which is exactly the type of evidence Rule 404 (b) aims to exclude. But if the government's broad interpretation of the "intent" exception to 404(b) were accepted, it would be so wide that the exception would swallow the general rule against prior bad act testimony. The government's argument fails for a

variety of reasons: first, this is purely propensity evidence and should be precluded under FRE 404(b); second, the robbery that Mr. Padua spoke of in the video occurred in 2005, over 15 years ago and is therefore too attenuated to ever prove a present day intent of the defendant to sell drugs; third, Mr. Padua lacks any criminal history whatsoever in relation to not just drug dealing, but even drug possession and there is no corroboration whatsoever for the one second statement in the video.

Most critically, the statement regarding when Mr. Padua used to sell drugs was in response to a question regarding a scar on his abdomen. In December of 2005, when Mr. Padua was eighteen years old, he was the victim of a robbery and was shot in the abdomen. See Dkt. No.35, Ex. A - medical record of Mr. Padua. This occurred *fifteen* years prior to the charged conduct in this case. The government posits no argument surrounding the attenuation of the statement regarding Mr. Padua being a drug dealer fifteen years ago. It simply argues that the evidence will prove motive, intent, plan, and knowledge of the conspiracy in this case. Implying that a thirty six year old man has the same intent that he had when he was a teenager flies in the face of common sense and the passage of time. Indeed, even if Mr. Padua had a far more reliable arrest or *conviction* for drug dealing that was fifteen years old, the government would still face an uphill battle in trying to introduce it to the jury. See FRE 609.

Additionally, the government possesses zero information regarding the alleged prior bad act that Mr. Padua was a drug dealer fifteen years ago. His criminal history is devoid of any charged conduct in relation to not just the sale of drugs, but even the simple possession of a controlled substance. See Dkt. (pre-trial bail report). There is no corroboration the government can offer to support its proposed introduction of the recorded statement of Mr. Padua.

In sum, the government's submission in this regard falls short of assuring this Court that defendant's ability to defend himself will not be unfairly prejudiced by this testimony.

**IV.    Denying Government's Motion to Preclude Defendant from Introducing Self-Serving Hearsay through Cross-Examination of Government Agents; in the alternative granting Mr. Padua's Motion in Limine to Admit his Statements Against Penal Interest to Exculpate.**

In the event the Court denies the aforementioned motions for Suppression and Preclusion, then Mr. Padua moves this Court to permit him to introduce the exculpatory portions of his custodial interrogation.  Before an exculpatory statement is admitted or can be made in the presence of the jury, the court must make a preliminary finding pursuant to Rule 104(b) that sufficient corroborating evidence has been offered. See United States v. Hawkins, 803 F.3d 900 (7th Cir. 2015). This should be done at a hearing immediately before trial. See Rule 17.1, Fed. R. Crim. P. This hearing is particularly critical in this case because the government failed to identify - in its motion to preclude - any potential portions of Mr. Padua's statement that it intends to introduce at trial. Dkt. 71, pg. 8-9.

After Mr. Padua was arrested on July 23, 2020, he was immediately taken to an interview room where he was interrogated by DEA Special Agent David Turner and DEA Special Agent Christopher Wisniewski. The interview lasted just under sixteen minutes. Throughout his time in the interrogation room, Mr. Padua repeatedly expressed anger over his arrest, shock about what he was being charged with, and made no admissions as to any criminal conduct. As such, any non-exculpatory snippets the government attempts to play for the jury would certainly be taken out of context. Any attempt by the government to limit the video taped statement are in hopes that the jury would not get a full picture of Mr. Padua's role in this case.

The government should be precluded from picking and choosing what portions of the short statement to play under both Federal Rule of Evidence 804(b)(3)(B) and Federal Rule of Evidence 106. Mr. Padua's interview in its entirety falls under the hearsay exception, statements again penal interest. At the time the statement was made, Mr. Padua was in the midst of being

interrogated by two DEA agents and was certainly exposed to criminal liability. Additionally, his statements are corroborated by not only the lack of evidence in this case but also the recorded statements of his co-defendant, Michael Vasquez who repeatedly told the same DEA agents that Mr. Padua had nothing to do with this.

Additionally, the rule of completeness requires Mr. Padua's recorded statement to be played in its entirety.  Under Federal Rule of Evidence 106, if a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction at that time, of any other part – or any other writing or recorded statements – that in fairness ought to be considered at the same time. In fact, the rationale for the rule is written directly into the text – as long as admission was necessary for a fair outcome, the common law rule of completeness could be applied. Based on the length of the statement which was almost exclusively exculpatory, any cherry picked language from the government will be inherently misleading, accordingly, if any of the statement is entered into evidence, the entirety of the statement must follow.

**V.      Preclude The Government from admitting evidence or testimony from any witnesses regarding Mr. Padua's "Threats" regarding co-defendant, Michael Vasquez; Mr. Padua's prior drug dealing as contained in his videotaped interrogation, and the fact he was a victim of a shooting Pursuant to F.R. E. 404(b)**

The government has also indicated that it intends to offer into evidence statements Mr. Padua made during a sixteen (16) minute videotaped post-arrest interrogation by two D.E.A. agents on July 23, 2020. *See* Dkt. No. 68, Govt. Ex. 10.  Mr. Padua moves, in *Limine,* for this Court to preclude any statements made during his post-arrest recorded interview that may be construed by the jury as threats to his co-defendant, statements made in regards to his criminal history, and any mention about him being a drug deal in the past or references to a shooting because it is irrelevant and inflammatory, and is only being offered to show propensity.  Fed. R. Evidence 402; 403; 404(b).

The Government has not specifically sought admission of these acts other than the above reference to Mr. Padua being a drug dealer in the past, but should they seek to introduce Mr. Padua's recorded interview from June 23, 2020, defense asks the Court to order various prejudicial portions of the statement redacted.

Mr. Padua seeks redaction of the following statements:

1. "…cause I told you guys I'm not incriminating that fuckin asshole cause I'm not getting killed - if he had something to do with it I'll deal with him when I get out…write that down I'm going to beat the living shit out of him." 00:42 – 1:07.

2. "Agent 1: Have you ever been arrested before?
   Agent 2: Yes he has.
   Agent 3: he's on probation right now.
   Juan Padua: For a burglary.
   Agent 2: What's your probation officer's name?
   Juan Padua: I don't even know her name, they just switched me to someone else.
   Agent 2: that's alright, we'll reach out to him."  15:30 – 15:50.

3. "I looked at your criminal history, I know what you were up to, you're not an angel but you're not a multi-national drug dealer either dude." 4:31- 4:44.

Any potential probative value of this evidence is substantially outweighed by the risk of unfair prejudice when it tends to have some adverse effect upon the defendant beyond tending to prove the fact or issue that justified its admission. *United States v. Kuthuru*, 665 Fed. Appx. 34, 39 (2d Cir. 2016) (unpublished opinion), citing *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). The probative value of each of the above portions of Mr. Padua's statement is substantially outweighed by any risk of unfair prejudice and should therefore be precluded under Federal Rule of Evidence 403.

VI.     **Preclude Cross-Examination of Mr. Padua Regarding Certain Prior
        Convictions Pursuant F.R.E., 609(b)**

In the event the Mr. Padua testifies at trial, the Government should be precluded from

utilizing Mr. Padua's prior convictions to impeach his credibility.  Such a result is mandated by

Rule 609(b) of the Federal Rules of Evidence. *See,* F.R.E., 609(b). That rule precludes the

admissibility of convictions more than ten years old.  See, Id.  Furthermore, the probative value of

admitting this evidence is far outweighed by its prejudicial affect to Mr. Padua.  See, F.R.E.,

609(a).  See generally, *United States vs. Garcia,* 291 F. 3d 127, 137-138 (2nd Cir. 2002).

The defense is aware of four (4) New York State criminal and criminal-related

convictions in Mr. Padua's history. They are as follows:

>    i.      Disorderly conduct in violation of N.Y.S. Penal Law §240.20
>            conviction from February 24, 2011. Sentence imposed $200 fine;
>
>    ii.     Petit larceny in violation of N.Y.S. Penal Law §140.35 conviction from
>            June 6, 2011.  Sentence imposed:  $300.00 fine*)*;
>
>    iii.    Attempted burglary in violation of N.Y.S. Penal Law §140.20
>            conviction from January 18, 2017.  Sentence imposed: *five years'
>            probation*; and
>
>    iv.     Attempted Assault in the third degree in violation of N.Y.S. Penal Law
>            §120.00(1) conviction on May 22, 2017.  Sentence imposed: c*onditional
>            discharge; order of protection*.

As of the filing of this motion, the defense has not received notification from the

government that it intends to utilize any of these convictions to cross-examine the defendant.

However, Mr. Padua moves *in limine* pursuant to F.R.E., 609(b) to preclude cross-examination

regarding these prior convictions should Mr. Padua testify at trial.

In pertinent part, F.R.E. 609 reads as follows:

>    **(a)**    **In General.** The following rules apply to attacking a
>            witness's character for truthfulness by evidence of a
>            criminal conviction:

(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

(A) must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

(B) must be admitted in a criminal case in which the witness is a defendant,if the probative value of the evidence outweighs its prejudicial effect to that defendant; and

(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement.

**(b) Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

(1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

(2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

As the Second Circuit has confirmed, "[b]oth Rule 609 and Rule 403… oblige the trial court to assess the probative value of every prior conviction offered in evidence and the remoteness of a conviction, whatever its age, is always pertinent to this assessment. Satisfying the ten-year provision of Rule 609 does not justify the automatic admission of a prior conviction under that rule nor assure that it has the requisite probative value under Rule 403." *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980). Although the standard is highly deferential, the broad discretion afforded to district courts in weighing the admissibility of evidence under Rule 403 "is not limitless." *United States v. Monsalvatge*, 850 F.3d 483, 498 (2d Cir. 2017), citing *United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015).

### a.   Petit Larceny Conviction

The February 2011 petit larceny conviction should be precluded as it occurred more than ten years ago and its probative value does not substantially outweigh its prejudicial effect; and it provides little insight into Mr. Padua's ability to provide credible testimony.  Such evidence would also run afoul of Rule 403, which prohibits evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### b.   Disorderly Conduct Conviction

The June 6, 2011 Disorderly Conduct violation should be precluded because: (1) it has no relevance to the defendant's character for truthfulness; (2) is not even a "criminal conviction" *(see, N.Y. Penal Law § 10.00(6) (defining "crime" as either a misdemeanor or felony); N.Y. Penal Law § 240.20 (characterizing disorderly conduct as a "violation")*; (3) does not implicate a dishonest act or false statement; and (4) occurred more than ten years ago. The presentation of this adjudication to a criminal jury presents zero probative value on the issue of truthfulness. The unduly prejudicial effect of its admission, however, would be substantial.

### C.   Attempted Burglary Conviction

The January 18, 2017 Attempted Burglary conviction should be precluded as the slight probative value of this conviction in establishing whether Mr. Padua is a truth-teller does not outweigh its prejudicial effect. As the defense is unaware of the underlying allegations, it is unclear whether this burglary offense included larceny, a crime of dishonesty, as the underlying crime intended to be committed inside the building in question. That the defendant only received a sentence of probation likely means there no injuries suffered during this incident.

### i.   NYS Probation Status

In addition, Mr. Pauda moves *in Limine* to preclude cross-examination of his New York State Probation Status and any trial exhibits referencing same (See Docket No. 68, Govt. Ex. A 034-041).  Such testimony is irrelevant and invites improper speculation by the jury and does not go to Mr. Pauda's truth or veracity.   Any evidence related to Mr. Padua's status on probation, should be excluded pursuant to Fed.R.Evid Rule 403 because its probative value as evidence of intent is substantially outweighed by its unfairly prejudicial effect.  The only probative value of this testimony is for the jury to draw an improper inference that Juan Padua is a person of bad character or someone with criminal propensities.  The testimony is inflammatory and unfairly prejudicial to the Defendant.

As indicated below, counsel is moving to suppress all of Mr. Padua's statements following his invocation of counsel. Moreover, the probative value of these comments do not substantially outweigh its obvious prejudicial effect. That Mr. Padua may be on probation from the 2017 burglary (referenced above) has little to no probative value in assisting the jury in its evaluation of the defendant's credibility as a witness.

### D.   Attempted Assault Conviction

Finally, the May 22, 2017 Attempted Assault conviction should be precluded, as it does not implicate a dishonest act or false statement, and its probative value does not substantially outweigh its prejudicial effect.    Such evidence would also run afoul of Rule 403, which prohibits evidence "if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Accordingly, the Government's should be precluded from introducing evidence or cross-examination of Mr. Padua's prior conviction or probation status.

**VII.    Preclude Statement of Non-Testifying Co-Conspirators; preclude the Government from introducing Co-Defendant, Michael Vasquez, Statements; and Severance**

On July 23, 2020, after their arrest, Mr. Padua and Mr. Vasquez were transported to the DEA Buffalo Resident Office. At that time Mr. Padua and Mr. Vasquez were both advised of their *Miranda* rights and were subjected to a custodial interrogation.  During a videotaped interrogation, co-defendant Vasquez made the following post-*Miranda* statements to the DEA, which predominantly incriminate Mr. Padua:

|   |   |   |
|---|---|---|
| a. | 4:50 pm | Vasquez paid Mr. Padua money but Padua did not know anything about the drug conspiracy (*see also*, Complaint affidavit, at 8); |
| b. | 4:52 pm | Vasquez said Padua had done this one other time; |
| c. | 4:53 pm | Vasquez said Padua called Vasquez and said he needed money – Vasquez said Padua would receive $ 1000; |
| d. | 4:55 pm | Vasquez met Padua at school; Padua called from Utica – this may have been how they met. |

On January 19, 2021, Mr. Padua moved to exclude the co-defendant's statements, under *Bruton* at the defendants' joint trial of this indictment.  *See*, Dkt. 36, at 15.  The government responded on March 10, 2021, by rejecting the applicability of *Bruton*, further indicating that a preliminary examination under F.R.E. 104(a), *Bourjaily v. United States*, 483 U.S. 171 (1987) and F.R.E. 801(d)(2)(E) should occur.  *See*, Dkt. 45, at 7-8. This Court issued a scheduling order on July 26, 2021, Dkt. 56 at 4, requiring that defense motions *in limine* be filed on or before September 20, 2021.

On September 13, 2021, the government confirmed it intended on having DEA Special Agent David Turner "testify to the defendants' statements."  *See*, Dkt. 62, at pp. 2-3 (witness #3). As of the date of the filing of these motions, Vasquez has not pleaded guilty. The testimonial

statements made by Mr. Vasquez to law enforcement on July 23, 2020, must be excluded at his joint trial with Mr. Padua.

The Sixth Amendment guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *see*, *Washington v. Griffin*, 876 F.3d 395, 404 (2d Cir. 2017), citing *Pointer v. Texas*, 380 U.S. 400, 403 (1965).  In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars out-of-court "testimonial" statements against a criminal defendant by a witness who is absent from trial unless the defendant had a prior opportunity to cross-examine the declarant. *Id*. at 68; *Griffin*, 876 F.3d at 404. Although the Court declined "to spell out a comprehensive definition of 'testimonial,'" it made clear that "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; <u>and to police interrogations</u>." *Crawford*, 541 U.S. at 68 (emphasis added).  The Confrontation Clause, however, "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 59, n.9.

In *Bruton*, the Supreme Court addressed Confrontation Clause claims in the context of out-of-court statements by non-testifying co-conspirators implicating a defendant in the charged crime. *Bruton* dealt with the oral confession of the defendant's co-conspirator that was admitted at their joint trial. *Bruton*, 391 U.S. at 124. The confession, which implicated the defendant, violated the defendant's right to confrontation, as the co-conspirator did not testify. *Id*. at 128; *see also*, *United States v. Reichberg*, __ Fed. Appx. __ , 2021 US App. Lexis 20935, at *19-20, n 37 (2d Cir. July 15, 2021), citing *Richardson v. Marsh*, 481 U.S. 200, 201-202, 206-209 (1987) (explaining *Bruton*).

Our facts are on all fours with *Crawford*, *Bruton* and their progeny.  It is plain from the July 23rd video-taped statements of Mr. Vasquez that he was being subjected to custodial

interrogation by two federal agents. These were testimonial statements that directly implicated and incriminated Mr. Padua. This is the government's strongest direct evidence against Mr. Padua. In other words, these statements "standing alone, would clearly inculpate [Mr. Padua] without the introduction of further independent evidence." *Reichberg*, *supra* at *19, n 38, citing *United States v. Delgado*, 971 F.3d 144, 155 (2d Cir. 2020). They are thus encompassed under *Crawford* and *Bruton*. Indeed, Mr. Padua will be left without the ability to confront Mr. Vasquez, who has no obligation to testify. "If the justification for a joint trial is outweighed by the prejudice to the co-defendants, the trial court can confront the prosecutor with the choice of forgoing either the evidence or the joint trial." *United States v. Figueroa*, 618 F.2d 934, 944-945 (2d Cir. 1980). At bar, the Vasquez testimony must be excluded or the trials of these two defendants should be severed.

**VIII.**     **Preclude the Government from introducing Co-Defendant, Michael Vasquez's Plea Allocution in the event Mr. Vasquez enters a guilty plea prior to the start of this trial**

Should Mr. Vasquez plead guilty in this action, it would constitute reversible error to admit his plea allocution at Mr. Padua's trial if Vasquez does not testify - - unless he is unavailable and Mr. Padua has had a previously opportunity for cross-examination. *United States v. Riggi*, 541 F.3d 94, 102 (2d Cir. 2008). The admission of this allocution would not be sufficiently remedied by limiting jury instructions, as such instructions are not presumed to have been followed where the prejudicial spillover is so overwhelming, as it would be at bar. *Riggi*, 541 F.2d at 104. Accordingly, Mr. Padua moves to preclude the admission of any plea allocution minutes relative to purported co-conspirator Vasquez.

**IX.     Conduct a Pretrial Conspiracy Hearing**

The government is seeking to introduce at trial statements of the alleged co-conspirator pursuant to F.R.E. 801(d)(2)(E).  Pursuant to *Bourjaily v. United States*, 483 U.S. 171, Mr. Padua

requests that the Court hold a pre-trial conspiracy hearing to assess the foundation for the introduction of any statements made by alleged co-conspirators which the government will seek to introduce against the defendant at trial.  This is particularly necessary here where there is no evidence that Mr. Padua knowledge of Vasquez's plan to receive drugs sent at 174 Germain Street. In fact, both defendants deny that the defendant knew of any drug conspiracy.  Moreover, Mr. Vasquez exculpates Mr. Padua during his custodial interrogation wherein he states that Mr. Padua did not know anything about the drug distribution scheme.  *See* Dkt. No. 9, Govt. Ex. 9.

A co-conspirator's statement is admissible against an accused only where the existence of a conspiracy has been established, and the statement is made during and in furtherance of the conspiracy. *Bourjaily*, 483 U.S. at 175; F.R.E. 801(d)(2)(E).  As the Second Circuit has further explained:

> Hearsay statements are admissible under the coconspirator exception if the district court makes two findings by a preponderance of the evidence: "first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of that conspiracy." In determining whether a conspiracy existed, the district court may consider the hearsay statement itself, but "'there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'"

*United States v. Desena*, 260 F.3d 150, 157-158 (2d Cir. 2001) (internal citations omitted); *United States v. Daly*, 842 F.3d 1380, 1386 (2d Cir. 1988).

The government, however, claims one piece of evidence, a brief singular text message, establishes a conspiracy between Vasquez and Mr. Padua.[1] On September 13, 2021, the government revealed this information:

---

[1] In its Motion *in Limine* (Dkt. No. 71), for the first time the Government indicates that there is a text message from a phone associated with Mr. Padua to Mr. Vasquez.  The phone extraction was disclosed to defense counsel on September 16, 2021, and counsel is currently working with F.P.D. Forensic Investigator Jerry Grant to review the extraction in its entirety.

> The government was also just informed by investigators that one of the phones seized from the defendants at the time of their arrest was finally able to be analyzed. This is the phone belonging to defendant Vasquez. In the extraction report, there is a text exchange between Vasquez and a number that connects to Padua. The text exchange has a message from the number connected to Padua to Vasquez at the time the subject parcel is delivered that his "food" had arrived. Shortly after that text, Vasquez sends a message that he is "outside." These messages correspond with the times when the subject parcel was delivered and when Vasquez was observed arriving to 174 Germain.

Dkt. 71, at pp. 6-7. In a footnote, the government indicates it "is not currently in possession of the extraction report but has been briefed on its contents and will provide it to defense counsel as soon as it is in possession of it." *Id*. at 6. This sketchy piece of evidence, which the defense has yet to analyze fully this extraction, is insufficient to establish a drug conspiracy.

Early scholarship following *Bourjaily* recognized the importance of a District Court requiring that there at least be the existence of a conspiracy when evaluating whether to admit a co-conspirator's statement. *See*, J. A. Alarcon, *Suspect Evidence: Admissibility of Co-Conspirator Statements and Uncorroborated Accomplice Testimony*, 25 Loy. L.A. L. Rev. 953, at 957 (1992) (observing that "[n]othing in *Bourjaily* precludes the suppression of co-conspirator statements if a district court has a reasonable doubt as to whether the government's proof establishes that the defendant was a member of a conspiracy. Under such circumstances, it appears to be the duty of the district courts to deny admission of coconspirator statements notwithstanding their relevance and admissibility under Rule 104(a)."). The Federal Rules of Evidence ultimately expanded on *Bourjaily*. *See*, Notes of Advisory Committee on 1997 Amendments to F.R.E. 801(d)(2) (observing that "[t]he amendment resolves an issue on which the [*Bourjaily*] Court had reserved decision. It provides that the contents of the declarant's statement do not alone suffice to establish a conspiracy in which the declarant and the defendant participated. The court must consider in addition the circumstances surrounding the

statement, such as the identity of the speaker, the context in which the statement was made, or evidence corroborating the contents of the statement in making its determination as to each preliminary question. This amendment is in accordance with existing practice. Every court of appeals that has resolved this issue requires some evidence in addition to the contents of the statement."). The government will not be able to satisfy this burden.

Accordingly, this Court should make a pre-trial evidentiary ruling on the admissibility of the purported text message pursuant to *Bourjaily* and F.R.E. 801(d)(2)(E) so the jury is not prejudiced by its content.

### X.       Preclude the Government from Conditionally Admitting Evidence (Dkt. No. 71)

Mr. Padua objects and moves to prohibit the Government from conditionally admitting evidence based upon the Defendant's aforementioned request for a pre-trial conspiracy hearing. In its Motion in Limine (Dkt. No. 71), the government indicated that it is seeking to conditionally admit evidence during its case-in- chief. The reason for the conditional admittance of evidence is two-fold. One, due to the COVID-19 pandemic, the Government is not in a position to accurately predict the scheduling of witness testimony. There will likely be issues that arise during jury selection and during trial testimony that will result in a delay in the proceedings. Two, due to witnesses schedules, the government may need to move testimony around to accommodate those schedules. This request to conditionally admit evidence will one, streamline the proof, and two, avoid needless confusion amongst the jurors.

First, the Government states that it may "be seeking to conditionally admit evidence during its case-in-chief" because the COVID-19 pandemic may cause issues with predicting the scheduling of witness testimony, and because it may need to move testimony around to accommodate those schedules. *See* Dkt. 71, pg. 9. What the government fails to mention in its motion is any specified requests for testimony that would need to be conditionally admitted. It

would impossible for the court to rule on an issue of conditional admissibility without actually assessing the testimony that is sought to be admitted.

In its motion, the Government relies on *Huddleston v. United States, 1085 S. Ct. 1496 (1988),* to support its argument that its motion to seek conditionally admitted evidence should be granted. While *Huddleston* is relevant in that Federal Rule of Evidence 104(b) deals with questions of conditional relevance, the governments reliance on a sweeping generalization is misplaced. In Huddleston, the court dealt with a piece of evidence first being admissible under Federal Rule of Evidence 404(b), and only then relied on F.R.E. 104(b) to determine its admissibility. The *Huddleston* court stated, "that the Government may parade past the jury a litany of potentially prejudicial similar acts that have been established or connected to the defendant only by unsubstantiated innuendo." Pg.1501. It was only after the Huddleston court determined that the evidence was admissible and relevant that it turned to the analysis of conditional relevance: "Such questions of relevance conditioned on a fact are dealt with under Federal Rule of Evidence 104(b). *Beechum*, supra, at 912–913; see also *E. Imwinkelried*, Uncharged Misconduct Evidence § 2.06 (1984)." Id. Here, the government has not sought to introduce any specific piece of evidence conditionally and therefore it would be impossible for the court to assess whether the evidence the government seeks to conditionally admit would be admissible.

## XI.    Preclude Cell Phone Extraction And Government Expert Witness Due To Government's Failure To Comply With Rule 16 And Their Obligation To Timely Decrypt and  Produce Electronic Evidence

For the reasons set forth below, the Court must preclude the Government's from introducing at trial the cell phone extraction disclosed to the Defense on September 16, 2021.[2] The Government took possession of electronic materials relevant to this case on July 23, 2020[3], more

---

[2] See Dkt. No. 71, p. 6.
[3] On July 31, 2020, Magistrate Judge Roemer issue a Search Warrants authorizing the

than year ago.  However, the Government not did produce those materials to Defendants until September 16, 2021.[4] The Government's failure to produce relevant evidence to the defense violates the principles of full and fair disclosure contemplated by the Constitution and federal criminal law. It implicates concerns regarding Defendants' right to a speedy trial, and Defendant's Constitutional Rights as outline in *Frye* and *Lafler*. And it threatens to cause substantial and incurable prejudice.

The Court set a deadline for Rule 16 Discovery in this case.  That date was December 20, 2020.  *See* Dkt. 18.  At no point in time did the Government seek an extension of this deadline. The late production of this discovery is violates  Rule 16 and extremely prejudicial to Mr. Padua and as such the Court should preclude its use at trial noncompliance with a discovery mandate pursuant to Federal Rule of Criminal Procedure 16(d)(2).

The law contemplates broad, full and fair disclosure to criminal defendants. "In criminal cases, the government has broad disclosure obligations." *See United States v. Kifwa*, 868 F.3d 55, 60 (1st Cir. 2017). "[T]he government's disclosures must be made in a timely manner." Id. In considering issues relating to the timing and substance of disclosure, the Court must ultimately consider what is just under the circumstances. See Fed. R. Crim. P. 16(d)(2).

Under Rule 16, it is well-settled that the District Court may set a deadline for the Government's processing and production of electronic information obtained incident to a search warrant. See, e.g., *United States v. Morgan*, 2020 WL 5949366 at *2, 1:18-CR-00108 EAW (W.D.N.Y. Oct. 8, 2020). Indeed, the W.D.N.Y. Local Rules of Criminal Procedure, Rule 12(a), expressly directs that the Court "shall issue an order" establishing, inter alia, a discovery deadline,

---

search of the electronic devices seized on July 23, 2020.
    [4] In the event the Court denies defense motion to preclude the cellphone extraction, and the Government's Expert witness, the Defense request an extension of time with respect to its Expert Witness disclosure and expert witness list.

as well as a cut off for "such other matters as the Court deems appropriate in the exercise of its discretion and supervisory powers".

The Morgan case is well-known in this district. A review of that decision is warranted on this issue. The case was indicted on May 22, 2018. 2020 WL 5949366 at * 1. The original scheduling order contemplated the completion of voluntary discovery by July 27, 2018. Id. Upon a motion from the Government that it needed more time to complete processing and disclosure of electronic devices seized incident to May 14 and May 15, 2018 search warrants, Magistrate Judge Schroeder set a deadline for the processing and production of electronic evidence obtained incident to the search warrant, requiring that the government complete its processing of the search warrant material by September 28, 2018 and turn over Rule 16 material from the search warrant material by October 12, 2018. Id. at * 2. The deadline for disclosure was later extended to July 31, 2019. Id. at *6. The case proceeded, and the Government failed to meet the discovery deadlines imposed by the Court – making late disclosures and failing to produce evidence from some devices entirely. Id. at * 29. After a status conference and pre-trial motions by the defense, the Court held a hearing regarding the Government's ESI production, and dismissed the Morgan indictment, noting:

> The Court reaches this conclusion primarily in view of the government's repeated missed deadlines resulting in the conditional interest of justice exclusion, the government's failure to produce by the July 31, 2019 deadline any material from several of the devices seized over a year earlier, and the government's failure to approach its electronic discovery obligations with the necessary vigor required to manage ESI of this volume. Id.

Certainly, when a government violates Rule 16, a district court "has broad discretion in fashioning a remedy." *United States v. Walker*, 974 F.3d 193, 204, (2d Cir. 2020). In considering whether a district court appropriately exercises its discretion in granting a particular remedy, if any, for a Rule 16 violation, the factors considered are "the reasons why disclosure was not made,

the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *United States v. Lee*, 834 F.3d 145, 159 (2d Cir. 2016) (quoting *United States v. Pineros*, 532 F.2d 868, 871 (2d Cir. 1976)) (finding that district court did not abuse discretion in admitting the defendant's oral statement that was not previously disclosed). To prove substantial prejudice under this framework, a defendant "must demonstrate that the untimely disclosure of the [evidence] adversely affected some aspect of his trial strategy." *Walker*, 974 F.3d at 204, (quoting Lee, 834 F.3d at 158) (alteration in original). Where late disclosure occurs, it may be appropriate to grant a continuance, *see United States v. Monsanto Lopez*, 798 F. App'x 688, 690-91 (2d Cir. 2020) (finding that even if Rule 16 violation occurred, district court "was well within its broad discretion" to grant a continuance of the trial as opposed to excluding the evidence), or in a particularly egregious case, a new trial may be warranted, *see United States v. Vinas*, 910 F.3d 52, 54 (2d Cir. 2018) (district court erred in denying defendant's request for new trial where the government's inaccurate pre-trial disclosure under Rule 16(a)(1)(A) caused the defendant to forgo moving to suppress an inculpatory statement introduced at trial that he made before receiving Miranda warnings).

Similarly, in another decision concerning the belated production of ESI by the Government, the Court in *United States v. Brown*, 308 F.Supp.3d 620, 627-28 (D. R.I. 2018) noted "[t]he timely disclosure requirement of Rule 16 is only effective if the government timely analyzes and tests the evidence it has in its possession. This is the only way to ensure that the discovery process proceeds fairly, justly, and effectively. Due diligence on the part of the government is an implicit requirement of Rule 16. If the government were allowed to sit on evidence, and wait until the last minute to analyze the evidence, and then claim the results just came into their possession, it would blow a huge hole in the government's disclosure obligation under the rules." It is

noteworthy that the Government has not shown any effort it has undertaken to decrypt, analyze or produce the ESI material in this case.  This is precisely what occurred here.

Beyond the requirement that the Government diligently produce Rule 16 discovery, setting a discovery deadline is critical for several reasons. First, and perhaps most importantly, the timely production of relevant evidence directly implicates concerns under the Speedy Trial Act, 18 U.S.C. § 3161 et seq. Section 3161(h) of the Act specifies the types of delays that are excludable from the speedy trial calculation, some of which are automatically excludable, but others of which are excludable only if a court makes certain findings enumerated in the statute. See Bloate v. United States, 559 U.S. 196, 203, (2010). The time needed for the Government to produce voluntary discovery and for the defense to prepare pretrial motions is not automatically excluded from the speedy trial clock, and therefore to stop the speedy trial clock an exclusion in the interests of justice must be granted pursuant to 18 U.S.C. § 3161(h)(7).

The Supreme Court has recognized the need for "procedural strictness" in granting an exclusion pursuant to § 3161(h)(7):

> The exclusion of delay resulting from an ends-of-justice continuance is the most open-ended type of exclusion recognized under the Act and, in allowing district courts to grant such continuances, Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases. But, it is equally clear that Congress, knowing that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured, saw a danger that such continuances could get out of hand and subvert the Act's detailed scheme. The strategy of § 3161(h)[7] ... then, is to counteract substantive open-endedness with procedural strictness. This provision demands on-the-record findings and specifies in some detail certain factors that a judge must consider in making those findings.

See Z*edner v. United States*, 547 U.S. 489, 508-09, 749 (2006). The failure comply with those requirements cannot be fixed after the fact—in other words, a court may not retroactively determine that the ends of justice support an exclusion of time. *United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985).Moreover, a deadline is also important because of the potential prejudice

done to the defendant when important materials are not disclosed in a timely manner. Simply put, when evidence is not disclosed in a timely manner, it is likely that a criminal defendant will lose the ability to identify witnesses and pursue investigative leads critical to defense at trial. While the Government's brief suggests a continuance is an appropriate remedy for late disclosure, the remedy often misses the mark -- witnesses' memories fade, and other evidence related to the late disclosed evidence is destroyed or erased with the passage of time.  Accordingly, as the Court did in Morgan, this Court should preclude any an all testimony regarding the cellphone extraction and preclude testimony of Government Expert Witness, Christine Siedsma, due to the Government's failure to comply with Rule 16 and their obligation to timely decrypt and produce electronic evidence.

## XII.   Preclude Any Law Enforcement Fact Witnesses From Testifying As An Expert

The defense advises the Court that an evidentiary issue may arise concerning the police testimony regarding various items of physical evidence recovered during the investigation. The evidentiary issue involves the use of law enforcement officials to provide expert testimony regarding the aforementioned seized property.  It is anticipated that the expert testimony will be in the form of sweeping conclusions about the use of the items, and the activities of individuals in proximity of these items.  Such conclusions will usurp the jury's function.[5]

Fed. R. Crim. P. 702 governs the admissibility of expert testimony.  The rule provides that:

> [I]f scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine the fact
> in issue, a witness qualified as an expert by knowledge, skill,
> experience, or training, or education, may testify thereto in the form
> of an opinion or otherwise, if

---

[5] See a more detailed analysis set forth in Defendant's Motion *in Limine* to exclude FBI Special Agent Clinton Winters (Docket No. 78).

> (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) that when this is applied the principles and methods viably to the facts of the case.

Fed. R. Evid. 702

When the Government seeks to introduce expert testimony in accordance with Rule 702 the District Court must serve as a gatekeeper because the principles pertaining to expert testimony apply with full force where law enforcement officials are called on to provide scientific, technical or other specialized knowledge to the trier of fact. *See United States v. Cruz*, 363 F.3d. 187, 192 (2nd Cir. 2004) (citing Fed..R.Evid. 702 advisory committee note to the 2000 Amendments (discussing the application of Rule 702 to a law enforcement official's expert opinion)). *See* also *United States v. Dukagjini*, 326 F. 3d. 45, 54 (2nd Cir. 2003) (noting that testimony admissible under Rule 702 may nevertheless implicate issues under Rule 403).

The evidentiary issue regarding the use of police experts may also involve police testimony that his expert opinions were based on his knowledge of the entire investigation. Such testimony, whether labeled expert or not, would convey to the jury that the police expert was testifying based on information not before the jury causing the jury to think that the police expert had knowledge beyond what was before them and that this information proved Mr. Padua's guilt. Such testimony is improper under *Dukagjini*. *See Dukagjini*, 326 F.3d. 53 (expressing concern about a government witness testifying as an expert on coded language and then going beyond interpreting the code and summarizing his beliefs about the defendant's conduct based on his knowledge of the case).

Lastly, such police expert testimony will allow the police officers factual testimony to be presented to the jury with an aura of expertise and authority which will increase the risk that the jury will be swayed by their factual testimony rather than relying on the jury's own interpretation of the facts before them. *See United States v. Borrow*, 400 F.3d. 109, 124 (2nd. Cir. 2005) (noting

that caution should be used when presented with the issue of allowing law enforcement officers to testify as both a factual and an expert witness).

## XIII.   Reserving the right to file additional motions

The defendant respectfully requests to reserve its right to submit supplemental memorandum to the Court on other issues, should the need arise after the filing of this motion. This request is based on the fact that additional issues may arise during trial preparation, and to facilitate the Court's consideration of those evidentiary issues.

## XIV.   Conclusion

Mr. Padua, respectfully reserves his right to supplement these motions *In Limine* once the Government provides the material previously requested, or because of additional information developed through continued investigation.

**WHEREFORE**, Mr. Padua respectfully moves for an Order of this Court as follows:

I.     Suppress Mr. Padua's Post-Arrest Custodial Statement after his Assertion Sixth Amendment Right to Counsel;

II.    Preclude testimony, comments or arguments regarding Mr. Padua's post-arrest assertion his Fifth and/or Sixth Amendment rights;

III.   Preclude the Government from admitting evidence or testimony from any witnesses regarding prior bad acts, and Response to Government's Motion to Introduce a Prior Bad Acts under F.R.E. 404(b);

IV.    Denying Government's Motion to Preclude Defendant from Introducing Self-Serving Hearsay through Cross-Examination of Government Agents; in the alternative granting Mr. Padua's Motion to Admit his Statements Against Penal Interest to Exculpate;

V.   Preclude the Government from admitting evidence or testimony from any witnesses regarding: (a) Mr. Padua's "Threats" regarding co-defendant, Michael Vasquez; Mr. Padua's prior drug dealing as contained in his videotape interrogation, and (c) the fact he was a victim of a shooting pursuant to F.R.E. 404(b);

VI.   Preclude Cross-Examination of Mr. Padua    Regarding Certain Prior Convictions Pursuant to F.R.E., 609(b)

VII.   Preclude Statements By Non-testifying Co-Conspirators; prohibit the Government from introducing Co-Defendant, Michael Vasquez's, Statement; and Severance;

VIII.   Preclude the Government from introducing Co-Defendant, Michael Vasquez's Plea Allocution in the event Mr. Vasquez enters a guilty plea prior to the start of this trial;

IX.   Conduct a Pretrial Conspiracy Hearing;

X.   Preclude Government from Conditionally Admitting Evidence;

XI.   Preclude Cellphone Extraction and Government's Expert Witness Due To Government's Failure To Comply With Rule 16 and Obligation To Timely De-encrypt and Produce Electronic Evidence;

XII.   Preclude Any Law Enforcement Fact Witnesses From Testifying As An Expert;

XIII.   Reserving the right to file additional  motions; and

XIV.   Granting such other and further relief as this Court deems just and fair.

**DATED**:                Buffalo, New York, September 20, 2021

Respectfully submitted,

**/s/  Fonda Dawn Kubiak**
Fonda Dawn Kubiak
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
fonda_kubiak@fd.org
*Counsel for Defendant Juan Padua*

**/s/ Carla Benz**
Carla Benz
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
carla_benz@fd.org
Counsel for Defendant Juan Padua


**/s/ Timothy P. Murphy**
**Timothy P. Murphy**
Assistant Federal Public Defenders
Federal Public Defender's Office
300 Pearl St., Suite 200,
Buffalo, NY 14202
(716) 551-3341, (716) 551-3346 (Fax)
Timothy_Murphy@fd.org
*Counsel for Defendant, Juan Padua*

**TO:**   Charles Watkins
Assistant United States Attorney

P. Richard Antoine
Assistant United States Attorney