UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

               v.

JUAN PADUA,

               Defendant.

_____

**20-CR-191-LJV**

**NOTICE OF MOTION**

| | |
|---|---|
| **MOTION BY:** | Carla Benz, Assistant Federal Public Defender |
| **DATE, TIME & PLACE:** | Before the Honorable Lawrence J. Vilardo, United States District Court Judge, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York, **on October 27, 2021 at 9:30 a.m.** |
| **SUPPORTING PAPERS:** | Affirmation of Assistant Federal Public Defender Carla Benz, dated October 25, 2021 |
| **RELIEF REQUESTED:** | Preclude October 18, 2021 Cellebrite Report. |
| **DATED:** | Buffalo, New York, October 25, 2021 |

**/s/  Carla Benz**
Carla Benz
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
Carla_benz@fd.org
*Counsel for Defendant Juan Padua*

**TO:**   Charles Watkins
       Assistant United States Attorney


       Richard Antoine
       Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,                              **20-CR-191-LJV**

            v.

                                             **MOTION TO PRECLUDE**

JUAN PADUA,                                                          **OCTOBER 18, 2021**
                                                                     **CELLEBRITE REPORT**

                    Defendant.

_____

## Introduction

At approximately 3 p.m. on October 20, 2021, five days before the trial was scheduled to begin, the government disclosed to the defense – for the first time – the Cellebrite extraction report for a cell phone seized from Juan Padua on July 23, 2020.  This cell phone had been seized and in the possession of the DEA since his arrest on July 23, 2020; even more critically, the DEA was expressly told the password for this device by Mr. Padua himself, immediately after his arrest in this case, a full 15 months prior to disclosure of the challenged extraction.  The late disclosure of this extraction report is in direct violation of Rule 16 and necessitates the preclusion of this evidence at trial.

Although the Court previously denied the defense's motion to preclude the cell phone extraction report of the co-defendant, Michael Vasquez, the factual circumstances here are markedly different.  Dkt. No. 113.   There, the government explained to the Court that Mr. Vasquez did not provide the passcode for his phone and its forensic experts were only able to get into the cell phone in July of 2021, after a new forensic program became available.  Conversely, for Mr. Padua's cell phone, the government did not need to forensically break into his phone:  as discussed in detail below, Mr. Padua affirmatively provided the arresting agents the passcode for

his cell phone on the day of his arrest, and the agents had the ability to access his phone for the duration of the case.

For the reasons set forth below, Mr. Padua asks the Court to preclude admission into evidence or testimony regarding the Cellebrite report (and the exhibits that stem from that report) turned over on October 20, 2021 as it is in violation of Rule 16, and preclusion is necessary to ensure Mr. Padua's right to a fair and speedy trial.  See Dkt. No. 131, Gov. Ex. 7C.

a. **Preclude Cell Phone Extraction Report Due to Government's Failure to Comply with Rule 16**

Mr. Padua was arrested on July 23, 2020.  At that time multiple cell phones and a tablet were recovered.  The Cellebrite extraction report at issue in this motion is on a phone that was recovered from Mr. Padua at the time of his arrest. Immediately after his arrest Mr. Padua was taken to DEA Headquarters where he was interrogated by law enforcement. During that interrogation, Mr. Padua promptly provided agents with the code to his cell phone:

> Juan Padua: I have $8000 in my bank account. Let me show it to you. Let me show it to you.
> Agent Wisniewski: I told you I'm not going to do that with you. If you want me to look in your phone give me your code number
> Juan Padua: *Okay bring the phone, I'll give you the code: it's LO824.* I got nothing to hide.
> Agent Wisniewski: What is it?
> Juan Padua: *LO824*
> Agent Wisniewski: Alright I'll look but –
>
> *See* Government Exh. 10 (Post- Arrest Interview of Juan Padua 7-23-2020) (emphasis added).

On October 13, 2021, the Court ordered that the Government and defense submit clips of Mr. Padua's interview that each side planned to use during the trial. Those clips were disclosed via email from the government on Saturday, October 16 around 6:00p.m.  Thereafter, on Monday, October 18, 2021, defense counsel was notified by the government that had accessed Mr. Padua's cell phone and a Cellebrite report would be forthcoming.  On October 20, 2021 that report was provided to counsel.

2

Defense counsel has no direct information as to what steps, if any, were taken by the DEA agents or the Government to perform a cell phone extraction on this phone prior to October 16, 2021.[1]  However, based on the timing of disclosure, it appears that the code Mr. Padua expressly gave to agents on July 23, 2020 was used *fifteen months later* to access the cell phone. A more blatant failure in due diligence on the government's part is difficult to imagine.  This late production of discovery unambiguously violates Rule 16.  It is inexcusable and it remains unexplained by the government, and is extremely prejudicial to Mr. Padua; as such the Court should preclude its use at trial as a sanction for its noncompliance with the Court-ordered discovery mandate pursuant to Federal Rule of Criminal Procedure 16(d)(2) and the Local Rules. To allow the results of this extraction into evidence at trial would violate Mr. Padua's right to a speedy trial, his right to due process, his right to present a defense, as well as his constitutional rights as outlined in *Frye* and *Lafler*.

The government has already indicated that it views the Rule 16 discovery deadline as a "fake deadline."  *See* Transcript of Pretrial Conference, October 13, 2021 (Dkt. No. 128 at 5). The government takes this bold position, despite the fact that this deadline was imposed pursuant to a written order by Judge Roemer on December 11, 2020, and is incorporated into Local Rule 12(a).  *See* Dkt. No. 18.  Moreover, it is well-settled that the District Court may set a deadline for the Government's processing and production of electronic information obtained incident to a search warrant.  *See, e.g., United States v. Morgan*, 2020 WL 5949366 at *2, 1:18-CR-00108 EAW (W.D.N.Y. Oct. 8, 2020).  Indeed, the W.D.N.Y. Local Rules of Criminal Procedure, Rule 12(a), expressly directs that the Court "shall issue an order" establishing, inter alia, a discovery

---

[1] Despite the fact that Agent Turner was present in the interrogation room when Mr. Padua twice revealed the passcode to his phone, Agent Turner did not include that information in any DEA reports, nor include the code in his application for a search warrant for that phone, which he submitted to Judge Roemer on July 31, 2020.  *See* Def. Ex. 6, Dkt. No.94.

deadline, as well as a cut off for "such other matters as the Court deems appropriate in the exercise of its discretion and supervisory powers".

In one high-profile case involving a significant delay in electronic discovery, Chief Judge Wolford recently dismissed for pervasive discovery violations on behalf of the government. *United States v. Morgan*,  2020 WL 5949366 at * 1.  In *Morgan*, the case was indicted on May 22, 2018.  *Id.*  The original scheduling order contemplated the completion of voluntary discovery by July 27, 2018. Id. Upon a motion from the Government for additional time to complete processing and disclosure of electronic devices, Magistrate Judge Schroeder set a deadline for the processing and production of electronic evidence obtained incident to the search warrant of September 28, 2018 and a deadline to turn over Rule 16 material from the search warrant material by October 12, 2018. Id. at * 2. The deadline for disclosure was later extended to July 31, 2019. Id. at *6. The case proceeded, and the Government failed to meet the discovery deadlines imposed by the Court – making late disclosures and failing to produce evidence from some devices entirely. Id. at * 29. After a status conference and pre-trial motions by the defense, the Court held a hearing regarding the Government's ESI production, and dismissed the Morgan indictment, noting:

> The Court reaches this conclusion primarily in view of the government's repeated missed deadlines resulting in the conditional interest of justice exclusion, the government's failure to produce by the July 31, 2019 deadline any material from several of the devices seized over a year earlier, and the government's failure to approach its electronic discovery obligations with the necessary vigor required to manage ESI of this volume.
> *Id.*

The government's failure to produce the cell phone extraction in Mr. Padua's case, until the very eve of trial, demonstrates what appears to be a pattern, first noted by Chief Judge Wolford in *Morgan*: "the government's failure to approach its electronic discovery obligations with the necessary vigor[.]"  *Id.*

Certainly, when the government violates Rule 16, a district court "has broad discretion in fashioning a remedy." *United States v. Walker*, 974 F.3d 193, 204, (2d Cir. 2020).   One of the

expressly-enumerated options set forth for a violation of Rule 16 is that the Court may "prohibit that party from introducing the undisclosed evidence[.]" Fed. R. Cr. Pro. Rule 16(d)(2)(c). In considering whether a district court appropriately exercises its discretion in granting a particular remedy, if any, for a Rule 16 violation, the factors considered are "the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance, and any other relevant circumstances." *United States v. Lee*, 834 F.3d 145, 159 (2d Cir. 2016). To prove substantial prejudice under this framework, a defendant "must demonstrate that the untimely disclosure of the [evidence] adversely affected some aspect of his trial strategy." *Walker*, 974 F.3d at 204, (quoting *Lee*, 834 F.3d at 158) (alteration in original).

In this case, the government cannot advance past the first prong of the analysis set forth in *Lee*: "the reasons why disclosure was not made[.]" *Lee*, 834 F.3d at 159. The passcode for the phone was readily accessible to the agents and the government for the duration of this case, well before the discovery deadline set in this case. That this passcode was not used to access the device should not be excused by the Court. As stated by another court confronted with the belated production of ESI by the Government, in *United States v. Brown*, 308 F.Supp.3d 620, 627-28 (D. R.I. 2018):

> "[t]he timely disclosure requirement of Rule 16 is only effective if the government timely analyzes and tests the evidence it has in its possession. This is the only way to ensure that the discovery process proceeds fairly, justly, and effectively. Due diligence on the part of the government is an implicit requirement of Rule 16. If the government were allowed to sit on evidence, and wait until the last minute to analyze the evidence, and then claim the results just came into their possession, it would blow a huge hole in the government's disclosure obligation under the rules." *Brown*, 308 F.Supp.3d at 627-28.

It is precisely this "huge hole in the government's disclosure obligations" that the remedy of preclusion, as sought in Mr. Padua's case, is designed to protect against. The government has already indicated that it views the Rule 16, Court-ordered deadline, to be "fake." Allowing the government to disregard its discovery obligations in this manner fails to create an adequate

5

deterrent for future discovery violations.  That is particularly true in this case, where the government has failed to provide any excuse or reason for its failure to abide by the Court-ordered discovery deadline.  As the government has established no good-faith, due diligence on its part with regard to the extraction, permitting its introduction at trial will further the government's mistaken impression that Rule 16 deadlines are "fake."

### b.  The Only Fair Remedy is Preclusion

Beyond the simple fact that discovery deadlines are imposed by the Court, compliance with discovery deadlines are practically and constitutionally important for several reasons. First, and perhaps most importantly where an individual is detained pre-trial, as is Mr. Padua, the timely production of relevant evidence directly implicates concerns under the Speedy Trial Act, 18 U.S.C. § 3161 et seq. Section 3161(h) of the Act specifies the types of delays that are excludable from the speedy trial calculation, some of which are automatically excludable, but others of which are excludable only if a court makes certain findings enumerated in the statute. *See Bloate v. United States*, 559 U.S. 196, 203, (2010). The time needed for the Government to produce voluntary discovery and for the defense to prepare pretrial motions is not automatically excluded from the speedy trial clock, and therefore to stop the speedy trial clock an exclusion in the interests of justice must be granted pursuant to 18 U.S.C. § 3161(h)(7).

The Supreme Court has recognized the need for "procedural strictness" in granting an exclusion pursuant to § 3161(h)(7):

> The exclusion of delay resulting from an ends-of-justice continuance is the most open-ended type of exclusion recognized under the Act and, in allowing district courts to grant such continuances, Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases. But, it is equally clear that Congress, knowing that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured, saw a danger that such continuances could get out of hand and subvert the Act's detailed scheme. The strategy of § 3161(h)[7] ... then, is to counteract substantive

6

> open-endedness with procedural strictness. This provision demands on-
> the-record findings and specifies in some detail certain factors that a judge
> must consider in making those findings.
> See *Zedner v. United States*, 547 U.S. 489, 508-09, 749 (2006).

The failure comply with those requirements cannot be fixed after the fact—in other words, a

court may not retroactively determine that the ends of justice support an exclusion of time.

*United States v. Tunnessen*, 763 F.2d 74, 77 (2d Cir. 1985).

In addition to speedy trial implications, the DEA's failure to produce the cell phone

extraction with additional incriminatory content on the eve of trial has a significant impact on the

defense strategy in this case and in fact permeates every aspect thereof.  The defense has

engaged in extensive pretrial litigation of motions in limine, submitted proposed exhibits, and

made strategic decisions in each of these endeavors.  To allow the government to turn over some

of the most critical information within its possession *after* these strategic decisions have already

been made (and cannot be reversed), puts the defense in a highly-prejudiced, and irrevocably

harmed position.  The Second Circuit, in *Padrone*, acknowledged the potential for prejudice

where a defense's trial strategy is undercut by the belated disclosure of a critical piece of

evidence:

> We believe that noncompliance with an order to furnish a copy of a statement
> made by the defendant is so serious a detriment to the preparation for trial and the
> defense of serious criminal charges that where it is apparent, as here, that his
> defense strategy may have been determined by the failure to comply, there should
> be a new trial.
>
> *United States v. Padrone*, 406 F.2d 560, 561 (2d Cir. 1969); *see also United
> States v. Rodriguez*, 799 F.2d 649, 654 (11th Cir. 1986) (granting new trial for
> discovery violation by government).

Moreover, as the failure to examine the cell phone appears to be the product of the

government's dereliction of its duties under Rule 16 – in failing to utilize the passcode for the

phone that was actually provided to government agents during a videotaped statement in the

immediate aftermath of his arrest – the conduct cannot and should not be simply excused; it

should result in the more severe sanction of preclusion of its use at trial. Nor can this prejudice be remedied by a delay in the trial: (1) Mr. Padua has been in custody for an extended period of time, pretrial, and should not be forced to undergo further pretrial detention due to the government's lapse; (2) such a delay would violate Mr. Padua's speedy trial rights; and (3) as outline above, the defense has already made irreversible strategic decisions in pretrial litigation that were premised on the government's adherence to the Court-imposed discovery deadlines.

Here, Mr. Padua's counsel received evidence two business days before trial was set to begin even thought that evidence has been in the agent's possession from the date of arrest. There was not enough time to even go through the entire extraction report, let alone review most of its contents with Mr. Padua. The contents of the report has severe detriment to defense's trial strategy that has been in place since the case was scheduled for trial on July 21, 2021. As such, the only remedy here is preclusion.

c. **Cellebrite Report Photographs Should be Precluded as Irrelevant and Highly Prejudicial**

Today, October 25, 2021, the government filed an amended exhibit list containing 35 thumbnail images from the Cellebrite extraction report discussed above that it intends to use at trial. *See* Government Ex. 7D and Ex. 7E. This list contains various images of a firearm, bags of what appears to be a white rock like substance, and a duffel bag of marijuana. First, the court must assess whether these photographs are relevant under FRE 401 and 402 as "irrelevant evidence is not admissible." FRE 402.

Here, Mr. Padua is charged in a drug conspiracy that spans two days: July 21, 2020 through July 23, 2020. The case involves a single package containing a kilogram of cocaine delivered to Mr. Padua's house on July 23, 2020. There is no allegation whatsoever of any guns being possessed or used in this case, and no firearms were seized from Mr. Padua or his co-defendant. Any mention of photographs of firearms is irrelevant to this trial. Additionally, the

8

photograph showing a duffel bag of marijuana and bags of a white rock like substance are wholly irrelevant to the charges in this case. There is no timestamp on those photographs and the contents of the phone date back as far as 2011.  There is no link between any of these photographs and the charged crime and as such they should be precluded.

**WHEREFORE**, it is respectfully requested that the Cellebrite Report extracted on October 18, 2021 be precluded at trial.

**DATED**:                     Buffalo, New York, October 25, 2021

Respectfully submitted,

**/s/  Carla Benz**
Carla Benz
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
Carla_benz@fd.org
*Counsel for Defendant Juan Padua*

**/s/  Fonda Dawn Kubiak**
Fonda Dawn Kubiak
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
fonda_kubiak@fd.org
*Counsel for Defendant Juan Padua*

**TO:**   Charles Watkins
Assistant United States Attorney

Richard Antoine
Assistant United States Attorney