**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____/

UNITED STATES OF AMERICA,

                        Case No. 1:20-cr-191
                              (LJV)

versus

                       **November 5, 2021**

JUAN C. PADUA,

              Defendant.

_____/

**TRANSCRIPT OF VOLUME V OF JURY TRIAL**
**BEFORE THE HONORABLE LAWRENCE J. VILARDO**
**UNITED STATES DISTRICT JUDGE**

**APPEARANCES:**           **TRINI E. ROSS, UNITED STATES ATTORNEY**
                     **BY:  CHARLES E. WATKINS, ESQ.,**
                     **and PIERRE RICHARD ANTOINE, ESQ.,**
                     Assistant United States Attorneys
                     Federal Centre
                     138 Delaware Avenue
                     Buffalo, New York  14202
                     For the Government.

                     **OFFICE OF THE FEDERAL PUBLIC DEFENDER**
                     **BY:  FONDA DAWN KUBIAK, ESQ.,**
                     **and CARLA J. BENZ, ESQ.,**
                     Assistant Federal Public Defenders
                     300 Pearl Street, Suite 200
                     Buffalo, New York  14202
                     For the Defendant

**PRESENT:**             **APRIL KELLY,** Paralegal
                     **JENNIFER L. DIMITROFF,** Investigator

**LAW CLERK:**          **WILLIAM M. HAYES, ESQ.**
                     **EMILY R. KEMPA**

**DEPUTY CLERK:**       **COLLEEN M. DEMMA**

**COURT REPORTER:**     **SUSAN M. RYCKMAN,** CP, Notary Public,
                     FORBES COURT REPORTING SERVICES,LLC
                     21 Woodcrest Drive,
                     Batavia, NY  14020,
                     (585) 343-8612

2

1            (Jury not present.)

2            **DEPUTY CLERK:**  20-cr-191, United States of

3     America versus Juan Padua.

4            Assistant United States Attorneys

5     Charles Watkins and Pierre Richard Antoine, Paralegal

6     April Kelly, and US Postal Inspector Brendan Jaffe

7     appearing on behalf of the Government.

8            And Assistant Public Defenders Fonda Kubiak

9     and Carla Benz appearing with Defendant.

10            Defendant is present.

11            This is the date set for the continuation of

12     the jury trial.

13            **THE COURT:**  Okay.  I have read the

14     submissions from both sides.  I see that none of us

15     got much sleep last night.

16            **MS. KUBIAK:**  That's correct, Judge.

17            **THE COURT:**  And I'm willing to listen.  I'm

18     more troubled by the rebuttal than I was yesterday

19     afternoon, after -- after reading it.  I had not

20     focussed on what I consider to be -- we're splitting

21     hairs, but what I consider to be a most egregious

22     violation, which was the objection that I sustained to

23     the statement that the Defendant was throwing

24     everything up against the wall, the kitchen sink

25     approach, because they know their client is guilty.

1          That -- that, to me, is, as I say, splitting

2     hairs, but incrementally worse than what followed

3     immediately thereafter, "I know he's guilty.  I know

4     he's guilty beyond a reasonable doubt."  Those are --

5     those are egregious.  Those are egregious.  There is

6     no other word for it.

7          And I -- and I looked at the case law.  I

8     mean, my instincts were immediately that those were

9     egregious.  I looked at the case law, and it's pretty

10    clear.

11         So let me hear from the Defense first.

12         **MS. KUBIAK:**  Judge, I think you hit the nail

13    on the head.  And if you look at our submissions, we

14    put that as the first --

15         **THE COURT:**  Yep.

16         **MS. KUBIAK:**  -- subheading, right?  So you

17    know, suggesting Defense Counsel does not believe in

18    the client's innocence is fundamentally the most

19    egregious thing.

20         **THE COURT:**  And I sustained that objection,

21    but --

22         **MS. KUBIAK:**  You did.  And then after that,

23    we go to the second egregious statement, which is

24    commenting on the Defendant's guilt.  So now we have

25    the most egregious -- the second most egregious.

4

1          And then there's spattered throughout other

2     things, and then finally, alleging that or commenting

3     that we had fabricated or suborned perjury.

4          So I mean, when you couple that in its

5     entirety, I mean, that certainly is the grounds for

6     mistrial with prejudice.

7          And then I think you have to expand it

8     further, and let's look at the entirety of the record.

9     Let's look at the mistrial motions we previously

10    filed, the opening statement issue, the first witness,

11    co-conspirator issue, the spontaneous statement issue,

12    and when you look at that in its entirety, and then we

13    look at what transpired between the time that Ms. Benz

14    finished her summation and the rebuttal began and that

15    colloquy -- which we do not have the transcript of --

16    with respect to the Government's irritation, with

17    respect to the Court's ruling, and then coming back

18    in.  And then the response is, this rebuttal.

19          **THE COURT:**  Yeah.

20          **MS. KUBIAK:**  So when you look at that in its

21    entirety, I think the only conclusion this Court can

22    make is that a mistrial with prejudice is necessary

23    under the entirety of the record.

24          **THE COURT:**  And let me say one more thing,

25    too, because I want to hear Mr. Antoine's response to

5

1    all of this.

2          But there was an objection raised at the end

3    of the summation that I overruled, that I look at now,

4    and say to myself, I think the reason that I overruled

5    it is because it paled in comparison to the earlier

6    parallel, but "do you understand the level of

7    conspiracy that has to be happening for everybody in

8    the Government to be out to get Juan Padua.  The

9    levels of conspiracy that everybody in the Government

10    to be out to get him.  Objection, overruled."

11          I think if that were the first -- the first

12    misconduct, prosecutorial misconduct, that were made,

13    I probably would have sustained that.  I think the

14    reason that I overruled it is because it just paled in

15    comparison to what came before it.  I think that that

16    was why my instincts were to overrule that.  I should

17    not have.  I think that was a mistake, to overrule

18    that.

19          So Mr. Antoine, I want to hear that.  And I

20    also want you to address the fact that, I mean,

21    Mr. Watkins was, obviously, very upset with me when I

22    denied the motion to reopen.  And in your papers, you

23    say, "that the Defense stated that the Government had

24    no evidence connecting the phone number to the

25    Defendant."

1          I read the Defendant's summation, I didn't

2   see that.  I saw the argument being, they presented no

3   evidence to you regarding the phone number.  They gave

4   you no evidence.  They put on no evidence.  I didn't

5   see Ms. Benz saying they had no evidence.  Now, maybe

6   I missed it, because it was a long summation, but I --

7   I don't see that in there.

8          But in any event, regardless, Mr. Watkins

9   was clearly upset.  He slammed the door on the way out

10  of the courtroom.  I let that pass.  I gave him -- he

11  asked for five minutes to cool off.  I told him he

12  could have five minutes.  He took ten or fifteen, and

13  then came back in here and gave that rebuttal riddled

14  with, certainly, the worst errors I've ever seen in my

15  six years of being a judge.  And maybe the worst

16  errors I've ever read.

17          So -- so tell me why the Defense isn't

18  right, that they're entitled to a mistrial, and maybe

19  a mistrial with prejudice?

20          **MR. ANTOINE:**  Well Judge, first of all, if

21  you allow me to be heard on this.  I would like to

22  start with a case we stated in our filing, United

23  States versus Farhane.  And essentially suggests that

24  during trial, particularly during summation, emotions

25  tend to be high in every case.  And particularly

1   during rebuttal, when Counsel is speaking

2   contemporaneously, sort of off the cuff, things almost

3   invariably are said, that you look back and you sort

4   of decide, maybe I shouldn't have put it this way or

5   maybe I shouldn't have put it that way.  That happens

6   in every case.

7           **THE COURT:**  It does --

8           **MR. ANTOINE:**  And Your Honor --

9           **THE COURT:**  Not like this it doesn't happen.

10          **MR. ANTOINE:**  No, I know.  But in this case

11  I understand that emotions have been extremely high

12  throughout the trial, and it sort of culminated into

13  what occurred during summation.

14          Now, for what it's worth, there are some

15  issues during closing arguments as it relates to the

16  Defense.  A lot of things were said during their

17  summation that were also unacceptable.

18          **THE COURT:**  Tell me.

19          **MR. ANTOINE:**  And --

20          **THE COURT:**  No objections raised, but tell

21  me.  Tell me what they are.

22          **MR. ANTOINE:**  Understood, Judge.  If I could

23  just finish my point, and I will go back to that, if

24  you don't mind?

25          **THE COURT:**  Sure.

1              **MR. ANTOINE:**  Counsel was speaking off the
2     cuff and sort of responding to what was perceived, on
3     our side, to be unfair comments and assessments of the
4     evidence in the case, and particularly arguments made
5     about facts that are not in evidence, things of that
6     nature.

7              And because of that, as I said, emotions
8     were high.  And the reason why I cited that case is
9     because it stands for the proposition that
10    particularly during rebuttal, Court's really should
11    not ascribe the worst meaning to every statement made
12    by Counsel, particularly on rebuttal.  Because, again,
13    it's not written.  A lot of it is not stuff that's
14    been thought about for a long time.  It -- it's
15    improvisation, and a lot of times things are said.
16    And that case suggests that, really, this Court
17    shouldn't ascribe the worse meaning to what was said
18    during -- during rebuttal.

19             **THE COURT:**  So what meaning --

20             **MR. ANTOINE:**  We concede, Judge --

21             **THE COURT:**  What meaning should I ascribe
22    to, they know their client's guilty, and that's why
23    they're throwing everything up against the wall?  What
24    -- what benign meaning should I ascribe to that?

25             **MR. ANTOINE:**  I will respond to that, Judge.

1    We -- we concede, as my Co-Counsel did yesterday, that

2    that statement was improper.

3         **THE COURT:**  Tell me -- no, no.  You said I'm

4    ascribing -- I shouldn't ascribe the worst meaning to

5    it.  And what I would like to know is, what less

6    harmful meaning should I ascribe to that statement?

7         **MR. ANTOINE:**  So when Counsel for the

8    Defendant is asking for a mistrial with prejudice --

9         **THE COURT:**  Can you answer my question?

10        **MR. ANTOINE:**  I -- I am.  I am, Judge.  If

11   you could just give me some leeway here.

12        **THE COURT:**  Okay.

13        **MR. ANTOINE:**  I'm answering the question.

14   It's a high burden, they have to demonstrate that we

15   intentionally set out to prejudice the jury.  And --

16   and the meaning you should ascribe to it is, this is

17   arguments that were made off the cuffs, and it was

18   improvised, and it may have been inartfully said, but

19   it was certainly not intentionally done to prejudice

20   the jury.

21        **THE COURT:**  That's not answering my

22   question.  My question is, what meaning should I

23   ascribe to the statement, they know their client is

24   guilty, and that's why they're throwing everything,

25   including the kitchen sink at you?  What is the

10

1    meaning that you can ascribe to that, that is anything
2    other than --
3              MR. ANTOINE:  Here's what I would ascribe --
4              THE COURT:  -- Defense Counsel -- what
5    meaning can you ascribe to that, other than that
6    Defense Counsel knows that their client is guilty, and
7    that they are trying to get him off by throwing
8    everything including the kitchen sink at you?  Tell me
9    a meaning.  Tell me a meaning other than that?
10             MR. ANTOINE:  Judge, respectfully --
11             THE COURT:  You don't need to be respectful.
12   You don't need to be -- look, don't give me
13   respectfully stuff.  Tell me -- tell me what the
14   meaning is?
15             MR. ANTOINE:  If I may.  So after speaking
16   with Co-Counsel yesterday, the intent of the
17   statement, really, what was meant behind those
18   statements, is that the Government has a strong case.
19   We believe in the strength of our case.  We believe
20   that we put on a lot of witnesses, particularly with
21   respect to the -- the statement that was -- that was
22   made by the Defendant in this case to the codefendant,
23   and we also had the expert witness on here yesterday
24   sort of explaining the modis operandi of those in the
25   drug trade and explaining the meaning of the code.  We

1    believe we had a very strong case.  And because of

2    that, the argument that was made -- and I am just

3    trying to explain it to you because you asked.  The

4    argument that was made is Counsel's approach, Defense

5    Counsel's approach, which is to attack each and every

6    single thing, benign or not, is -- is the approach of

7    a team that understands that it's sort of losing.

8              That doesn't mean that we are impugning

9    anybody's character, that we're suggesting somehow,

10   you know, that that's -- and it goes back to US versus

11   Farhane, which I -- which I -- which I spoke about

12   earlier.

13             We're asking the Court not to ascribe the

14   worst intent behind this argument.  This is

15   contemporaneous arguments that were being made

16   yesterday, and we believe that we have a strong case,

17   and because of the strength of our case, we believe

18   that inspires a Defense that appears to be sort of

19   throwing everything on the wall and hoping something

20   sticks.  We're not suggesting somehow that Counsel for

21   the Defendant was making, you know, disingenuous

22   arguments that they know to be false.  That's not what

23   we're saying.  So we're asking this Court to take us

24   at our word --

25             **THE COURT:**  You said that they suborn

12

1    perjury.

2            **MR. ANTOINE:**  No, that's Counsel's word.  We

3    didn't say that.

4            **THE COURT:**  Of course you did.  You said --

5    okay.  Let's go back to the transcript.

6            **MS. KUBIAK:**  Judge, it's on --

7            **THE COURT:**  Hang on.  "So let's talk about

8    some of the testimony we heard.  We saw a witness --

9            **MR. ANTOINE:**  I'm sorry, Judge, what page

10   are you looking at?

11           **THE COURT:**  I am on Page 2.  We saw a

12   witness from the Defense sit right there on that

13   stand, and he told you, I took pictures of that

14   staircase in the back of the house that leads to the

15   attic.  And he was asked by my Co-Counsel, well, where

16   are those pictures?  Well, I gave them to the Defense.

17   Did you ever see them?  I didn't see them.  So all you

18   have to go on is his word.  A word of a biased

19   witness.  And if you have the word of a biased

20   witness, you can ignore it.  I implore you to ignore

21   it because I will say to you flatly, it's not true.

22           **MR. ANTOINE:**  Your Honor, so as I understand

23   it, your argument or statement to us just now, is that

24   we actually used the word suborning perjury.

25           **THE COURT:**  No, I didn't say you used the

1    word suborning perjury.  I said --

2          **MR. ANTOINE:**  I thought that's what you

3    said, Judge.

4          **THE COURT:**  No.  I said -- I said that his

5    rebuttal accused the Defense of suborning perjury.  I

6    think that does.  I think saying that it is not -- the

7    evidence that they presented to you through a biased

8    witness is not true, is suborning perjury.

9          He argued that there is no back staircase to

10   the second floor.  Something that the Defense -- now,

11   I don't know whether there is or there is not.  The

12   argument that all you have is a biased witness who is

13   making that statement, you don't have any photos,

14   that's fine.

15         **MR. ANTOINE:**  I'm happy to respond to that,

16   Judge?

17         **THE COURT:**  I'm sorry?

18         **MR. ANTOINE:**  I'm happy to respond to that.

19         **MS. BENZ:**  Your Honor, can I say one thing?

20         **THE COURT:**  No.  I want to hear from

21   Mr. Antoine.

22         **MR. ANTOINE:**  Absolutely.  Again, it goes

23   back to we're asking the Court to take us at our word

24   that we're approaching this in good faith.  And the

25   reason why we're asking the Court to do that is

1    because, again, it goes back to the case I cited.

2          Counsel for the Government yesterday was

3    speaking contemporaneously, and he was approaching the

4    situation in good faith, and here's why.  We have been

5    investigating this case for some time, for over a

6    year, for that matter.  And we have spoken to our

7    witnesses, we have spoken to our agents.  As far as we

8    know, still as I'm speaking with you now, there is no

9    back staircase.

10          **MS. BENZ:**  Your Honor --

11          **THE COURT:**  Stop, stop.

12          **MR. ANTOINE:**  If I may just finish, please?

13          **THE COURT:**  No, no, you can't finish.  Is

14    there a photo?

15          **MS. KUBIAK:**  There is --

16          **MR. ANTOINE:**  There's a reason why I'm

17    saying that --

18          **MS. KUBIAK:**  It's Government Exhibit 3A-20

19    taken at the time of the arrest by Agent Turner.

20          **MR. ANTOINE:**  I have an explanation --

21          **THE COURT:**  I will listen to your

22    explanation, but I want to see the picture.

23          **THE DEFENDANT:**  The handrail.  The railing.

24          **MS. KUBIAK:**  This is Government Exhibit,

25    Judge, it was marked for trial.  They had it in their

1    possession since July 23rd, 2020.  Okay.  And what

2    you're seeing --

3              **THE DEFENDANT:**  Really?

4              **MS. KUBIAK:**  -- in this photograph, you're

5    coming out of Mr. Padua's apartment.  The view that

6    you're seeing is to the back staircase.  That's the

7    backyard with the red garage.  To your right in this

8    area right here is the attic.  Those are the stairs

9    that lead down to the hallway, out to the back door,

10   which is Defendant's Exhibit 17 and 18.

11             **THE COURT:**  Okay.

12             **MS. KUBIAK:**  This was in their -- this was

13   in their possession.

14             **THE COURT:**  I got it.  Enough.  Enough.

15             **MS. KUBIAK:**  They choose not to --

16             **THE COURT:**  Enough.  I want to hear from

17   Mr. Antoine.  Mr. Antoine?

18             **MR. ANTOINE:**  Thank you for the time to be

19   heard, Your Honor.  Hopefully this time uninterrupted.

20             What I meant to say, we've been

21   investigating this case for a while.  We've spoken

22   with our agents.  We've asked -- that we've done our

23   due diligence.  We've asked about every access points

24   to the house.

25             And our understanding -- by the way, Mr.

1    Watkins and I didn't go into the house personally.  We

2    don't know what's in there.  We only have the word of

3    our investigators and our agents.  Their

4    representations to us, is that the only access point

5    into that apartment is through that front door.

6            Now we're looking at a picture that Counsel

7    just put up.  I don't know what that's a picture of.

8    They represent this is a picture of a back staircase.

9            **MS. BENZ:**  Why didn't they ask their agent?

10           **MR. ANTOINE:**  Judge, do you know that to be

11   true?  I don't know that to be true.  What I know to

12   be true is what's represented to the Government by our

13   agents.  And that is there is no other access points

14   into this apartment other than the front door.

15           **THE COURT:**  So it's okay under those

16   circumstances to testify -- to tell the jury that what

17   the Defense said is not true?  Is that what you're

18   telling me?  You thought -- you don't know, do you?

19   Do you know whether there's a back entrance?

20           **MR. ANTOINE:**  We thought we did.

21           **THE COURT:**  Do you -- do you know now, as

22   you sit here now, do you have any doubt as to whether

23   there's a back entrance?

24           **MR. ANTOINE:**  Judge, what you're asking me

25   is sort of, respectfully, it does not answer for why

1    the statements were made yesterday.

2             Now if I may, if I may continue?

3             **THE COURT:**  Sure.

4             **MR. ANTOINE:**  Right.  Now, we're asking the

5    Court to take us at our word.  We approach this in

6    good faith, and again, we're asking the Court to

7    understand why those statements were made.  They were

8    made contemporaneously, and we knew -- and at the time

9    the statements were made, we knew or we thought we

10   knew, at the very least we thought we knew, that it

11   is, in fact, not true that there's any other access

12   points into this apartment and there is no staircase

13   into the apartment, because that's what our

14   investigation revealed.

15            **THE COURT:**  Now, according to what Counsel

16   is representing to me, it looks now -- do you have

17   other photos that your guy took?

18            **MR. ANTOINE:**  How do we know this is not the

19   front staircase?

20            **MS. KUBIAK:**  We do, Judge.

21            **MR. ANTOINE:**  How do we know this is not the

22   front staircase?

23            **MR. KUBIAK:**  We do have multiple

24   photographs.

25            **MR. ANTOINE:**  We are asking the Court not to

1    ascribe the worst meaning to Counsel's argument.

2         **THE COURT:**  I don't --

3         **MR. ANTOINE:**  It is to the good faith, and

4    what he said, he thought it was true.

5         **THE COURT:**  I don't know.  I don't know.

6    But neither do you.  And the point is, that by saying

7    that's not true, by saying, I will say flatly, it's

8    not true, that is inappropriate.

9         **MR. ANTOINE:**  Judge, and here's where you

10   and I may, surprisingly, agree.  I do agree that there

11   were things said yesterday that were not appropriate.

12   We completely agree.

13        **THE COURT:**  I'd be astounded if you didn't.

14        **MR. ANTOINE:**  Now, where we -- well, I don't

15   know if we disagree yet because I don't think the

16   Judge handed down a decision.  But where we may have a

17   difference of opinion is with respect to the remedy.

18   We do not believe that this is egregious enough, that

19   it's prejudicial enough, to warrant a mistrial.  A

20   mistrial with prejudice or without.

21        **THE COURT:**  Let me ask you this:  You told

22   me earlier on when I asked you about what the

23   statements in Defense Counsel's summations were that

24   got Mr. Watkins so riled up, you were going to tell me

25   what they were.  Tell me what they were, please.

1          **MR. ANTOINE:**  Judge, if you could just give

2     me one moment, please?

3              **THE COURT:**  Take your time.

4              **MS. KUBIAK:**  Judge, can I just comment on

5     the --

6              **THE COURT:**  No.

7              **MS. KUBIAK:**  -- back entrance?

8              **THE COURT:**  No.  You will get your chance,

9     Ms. Kubiak.

10             **MS. KUBIAK:**  That's fine.  Thank you, Judge.

11             **MR. ANTOINE:**  Judge, if you'll indulge us

12    for a few moments.  If I could just take them one by

13    one.

14             First, Counsel for the Defendant starts

15    describing or defining the law to the jury, which as

16    Your Honor knows, is within the privy of the Court.

17    She defined what her version or definition of

18    reasonable doubt is, which was completely inconsistent

19    with what I'm sure the instructions to the jury is

20    going to be.  We believe that to be inappropriate.

21             Here's something else that we believe to be

22    inappropriate.

23             **MS. BENZ:**  Can I have -- can I have a --

24             **MR. ANTOINE:**  If I may finish, Judge?

25             **MS. BENZ:**  Can I please have a cite?  If

20

1   you're going to specifically take out my words, I

2   would like a cite to the transcript that you're

3   referring to.  Thank you.

4           **THE COURT:**  I think that's only fair.

5           **MR. ANTOINE:**  Judge, Page 3, starting Line

6   16.

7           Second, Page 12, "let's talk about what we

8   don't know, what the Government has to prove.  We

9   don't know who sent that text message."  Your Honor

10  knew.  Counsel knows exactly who sent that text

11  message.

12          **MS. BENZ:**  No, I don't know.

13          **MR. ANTOINE:**  If I may?

14          **THE COURT:**  Let them make their argument.

15  Let them make their argument.

16          **MR. ANTOINE:**  If I may?

17          **THE COURT:**  Please.

18          **MR. ANTOINE:**  There's been arguments made

19  that we don't know who this phone number belongs to,

20  the phone number belongs to.  Here's what we do know,

21  Judge.  We know Katharine Wattie, the probation

22  officer, testified yesterday -- not yesterday,

23  whenever she testified.  A few days ago.  And she said

24  she's been supervising Mr. Padua for years.  He

25  provided that phone number to her.  She contacted him

21

1    multiple times on that phone number.

2            THE COURT:  And she says --

3            MS. BENZ:  I said that --

4            THE COURT:  Stop, please.  And she says, all

5    they've proven to you is that the number ending in

6    2412 sent the text.  She said that.

7            MR. ANTOINE:  Secondly, Judge, we know the

8    evidence -- the Court precluded the Defendant's phone,

9    that's the phone number that's associated with that

10   phone.

11           THE COURT:  Okay.

12           MR. ANTOINE:  Okay.

13           THE COURT:  That was precluded, and you

14   presented no evidence.  So tell me what she said.

15           MR. ANTOINE:  So we don't believe that to be

16   appropriate.

17           THE COURT:  What's not appropriate?

18           MR. ANTOINE:  They're using, again, it's --

19           THE COURT:  Tell me the statement.  Tell me

20   the words that are inappropriate.

21           MR. ANTOINE:  They -- "all they've proven to

22   you is that the number ending in 2412 sent the text.

23   They haven't linked that number to any of the cell

24   phones recovered in the house."  That's not true.

25   That is flatly false.  We put the phone --

1           THE COURT:  How did you --

2           MR. ANTOINE:  -- into evidence.

3           THE COURT:  Wait a minute.  Wait a minute.

4           MR. ANTOINE:  We put the phone in evidence.

5           THE COURT:  They haven't linked that number

6    to any of the cell phones recovered in the house.  You

7    didn't hear any evidence of that.

8           What evidence did you present to the jury

9    that the number was linked to one of the cell phones

10   recovered in the house?

11          MR. ANTOINE:  So the phone that was

12   recovered in the house is Mr. Vasquez's phone.

13          THE COURT:  What evidence?  Answer my

14   question, please.

15          MR. ANTOINE:  Sure.

16          THE COURT:  What evidence did you present to

17   the jury that the number ending in 2412 was linked to

18   a cell phone recovered in the house?  What was the

19   evidence that you presented to the jury of that?

20          MR. ANTOINE:  So Katharine Wattie took the

21   stand and testified to a phone number.

22          THE COURT:  Right.

23          MR. ANTOINE:  Right.  And that phone number

24   was linked to a cell phone that was recovered in the

25   house.

1           **THE COURT:**  What evidence did you present to

2     the jury that linked that number to a cell phone

3     recovered in the house?

4           **MR. ANTOINE:**  So two things:  One, we put in

5     Mr. Vasquez's cell phone into evidence, and two, we

6     would have put Mr. Padua's cell phone in evidence,

7     except that was precluded, and Defense knows that.  So

8     now they're using it against us.

9           **THE COURT:**  So let me try one more time.

10    What evidence did you present to the jury that the

11    number ending in 2412 was linked to a cell phone

12    recovered in the house?

13          **MR. ANTOINE:**  Your Honor, our case agent

14    testified, Dave Turner.  David Turner testified to all

15    of the cell phones recovered in the house, and he

16    testified to Mr. Vasquez's cell phone that was

17    recovered in the house.  And that -- that cell phone

18    received a text message from the number ending in

19    2412, which belongs to Mr. Padua.

20          **THE COURT:**  Let me try one more time.  What

21    evidence did you present to the jury that linked --

22    listen to the question, please, Mr. Antoine.

23          **MR. ANTOINE:**  I hear you, Judge.  I

24    understand.

25          **THE COURT:**  What evidence did you present to

24

1    the jury that linked one of those cell phones in the

2    house to number 2412?

3            **MR. ANTOINE:**  One moment, Judge.  So Judge,

4    the only answer I can provide with respect to that

5    statement is, we had Mr. Vasquez's phone in evidence,

6    which received a message from 2412.  That was

7    elicited.  That was elicited.

8            We would have put that phone that belongs to

9    Mr. Padua in evidence as well had that not been

10   precluded.

11           **THE COURT:**  Right, but that was precluded.

12   So the answer is, the jury had no evidence --

13           **MR. ANTOINE:**  Right.

14           **THE COURT:**  -- that 2412 was linked to a

15   phone recovered in this case?

16           **MR. ANTOINE:**  Okay.

17           **THE COURT:**  So --

18           **MR. ANTOINE:**  We have some additional --

19           **THE COURT:**  I understand, and I will listen

20   to all the arguments you have to make.  I will listen

21   to all of them.  I want to dispose with this one.

22   There is nothing wrong then with saying, "they haven't

23   linked the cell phone to any number recovered in the

24   house.  You didn't hear any evidence of that."  That's

25   an accurate statement, and a fine argument by Defense

1   Counsel.

2           So let's -- let's go to the next one.

3           **MR. ANTOINE:**  Judge --

4           **THE COURT:**  What's the next improper

5   statement that they made that Mr. Watkins was hot

6   about?

7           **MR. ANTOINE:**  Judge, the other thing that we

8   find to be objectionable are all of the personal

9   stories and putting facts that are not in evidence

10  before the jury.

11          For example, Page 13, Line 22.  "And so I

12  want to tell you a personal story, and the Court has

13  already heard the story."  Now, this is the story

14  where she pointed out this text message from her

15  husband and all of that.  None of that came in during

16  the trial.  We find that to be highly prejudicial --

17          **THE COURT:**  Mr. Antoine --

18          **MR. ANTOINE:**  -- and inappropriate.

19          **THE COURT:**  Okay.  Mr. Antoine, I have heard

20  arguments made by Defense Counsel, and I've heard

21  arguments made by the Prosecutor.  I remember one

22  Prosecutor who gave a terrific argument about his son

23  getting caught with his hand in the cookie jar, and

24  chocolate all over his hands.

25          **MR. ANTOINE:**  That's probably inappropriate,

1    too.

2            THE COURT:  You think?  You think that --

3    you think that stories like that, that try to link the

4    jury's understanding of a concept or an argument, are

5    inappropriate?

6            MR. ANTOINE:  Yes, Judge, I think that

7    immersing yourself into -- into the trial

8    personally --

9            THE COURT:  Okay.

10            MR. ANTOINE:  -- putting your own -- Judge,

11    you asked me a question.

12            THE COURT:  I understand, and you're giving

13    me an answer.

14            MR. ANTOINE:  I can see you're dismissing it

15    outright.

16            THE COURT:  No, I am not dismissing it.  I

17    disagree with you.  I've heard arguments like that

18    innumerable times by scores of lawyers, and I've never

19    heard anyone argue that one of those kinds of

20    illustrative stories is prejudicial.  I've never heard

21    that.  I've never heard anything like that.  But you

22    make your argument.  You make your argument, okay.

23    What else was improper?

24            MR. ANTOINE:  Page 15.  "If Juan Padua knew

25    cocaine was in that package, his son would have never

1     been in that apartment that day."

2            Where is there evidence of that in the

3     record?

4            THE COURT:  You don't think that's fair

5     argument?

6            MR. ANTOINE:  No, I don't, Judge.  I think

7     that's just Counsel, essentially, testifying on behalf

8     of her client.

9            MS. BENZ:  Your Honor, if I may?  In closing

10    statements, Mr. Watkins stated that my client was a

11    bad father because his son was in the apartment that

12    day.  And that's the only reason I made that statement

13    in my closing.

14            THE COURT:  So what do you say about that,

15    Mr. Antoine?  Mr. Watkins was okay saying that

16    Mr. Padua was a bad father because his son was there?

17            MR. ANTOINE:  No.  Mr. Padua -- I mean,

18    Mr. Watkins never said Mr. Padua was a bad father,

19    Judge.  That is not true.  That is not true.

20            MS. KUBIAK:  I think that is exactly what he

21    intimated, Judge.

22            THE COURT:  Hold on.  One at a time, folks.

23    One at a time.  We will -- let's let Mr. Watkins

24    finish.

25            MR. ANTOINE:  Mr. Antoine, Judge.

1          THE COURT:  I'm sorry, Mr. Antoine.  I'm

2    sorry.  Go ahead.  What's the next one?

3          MR. ANTOINE:  Okay.  Are we done with this

4    argument, Judge?

5          THE COURT:  You make whatever argument you

6    want.

7          MR. ANTOINE:  We don't believe that to be

8    appropriate.  We believe Counsel is, essentially,

9    testifying on behalf of her client.  There's no

10   evidence on the record whatsoever suggesting that

11   Mr. Padua is either a good or a bad father or what he

12   would or would not have done, unless he took the stand

13   to testify to that.

14          Judge, Page 19, starting with Line 12.  Did

15   you notice -- and this is coming from Counsel during

16   her closing argument.  "Did you notice that

17   Inspector Carosella was the only agent there on

18   July 23rd who testified, and the Government never

19   asked her, do you see Juan Padua?  Do you see the guy

20   you saw picking up the package that day?  They never

21   asked because the answer would have been, oh, that

22   wasn't the guy in the white shirt."

23          Now, this -- this is problematic on several

24   different levels.  One, Inspector Carosella never

25   testified that she saw who picked up the package.  So

1    we're not going to ask her to identify the Defendant

2    when she never saw him, and she never testified that

3    she saw him.  That's inappropriate argument.  That's

4    inappropriate.

5           **THE COURT:**  She didn't say she saw somebody

6    in a white shirt?

7           **MR. ANTOINE:**  She said she saw someone with

8    a white shirt as she's walking away.  She did not say

9    that she saw Mr. Padua.

10          In fact, we asked her during preparation for

11   trial, she told us she didn't see who picked up the

12   package, she only saw, as she's walking away, the

13   glimpse of someone wearing a white shirt.  We are not

14   going to ask her to identify Mr. Padua.  She never saw

15   him, she never testified that she did.  So we think

16   that's inappropriate.

17          **THE COURT:**  You don't think that's fair

18   argument?

19          **MR. ANTOINE:**  If I could just continue,

20   Judge.  Secondly, because the answer -- she's

21   suggesting -- Counsel's suggesting that we didn't ask

22   her that because the answer would have been, oh, that

23   wasn't the guy in the white shirt.

24          **THE COURT:**  And you don't think that's fair

25   argument?

1          **MR. ANTOINE:**  That's absolutely

2   inappropriate, Judge.  She cannot -- she can't say

3   that.  She cannot testify -- again, she is putting

4   facts that are not in evidence.  I don't believe

5   that's fair argument.  If that's what you're asking

6   me, Judge, my answer is, no, I don't believe that's

7   fair at all.

8          **THE COURT:**  Okay.  You don't think an

9   inference the jury can draw from the Government's

10  failure to ask that question, is that she would have

11  said, no, it's not Juan Padua?

12         **MR. ANTOINE:**  Oh, yeah, and there's another

13  one, Judge.

14         **THE COURT:**  I'm sorry?

15         **MR. ANTOINE:**  Agent Wisniewski did not

16  testify in this case.

17         **MS. BENZ:**  Can we get a cite, please?

18         **MR. ANTOINE:**  Just a moment.

19  Agent Wisniewski did not testify in this case.  And

20  his handwritten notes, 3500 material, were not

21  admitted in evidence.

22         Yet during closing argument, Counsel

23  directly quoted from Government Trial Exhibit 3503B,

24  eliciting facts that are not in evidence.  We believe

25  that to be inappropriate as well.

1          **THE COURT:**  Wasn't there cross-examination

2   from -- on Mr. Turner about -- Special Agent Turner,

3   about the fact that what he was saying was taken down

4   in notes by Wisniewski, and that nothing about the --

5   I forget what the specific item was that wasn't in the

6   notes, but --

7          **MR. ANTOINE:**  Judge, that piece -- that

8   piece of evidence was never admitted, and Counsel

9   quoted directly from it.

10         **THE COURT:**  Wasn't there cross-examination

11  on that?

12         **MS. KUBIAK:**  Yes, there was.

13         **MS. BENZ:**  There was, Your Honor.  And I

14  read it to Agent Turner, that exact quote, and he

15  said, yes, that's what Agent Wisniewski wrote down.

16  And so that's why I quoted that in my closing because

17  it was a question that he answered in the affirmative.

18         **THE COURT:**  Okay.  Next one?

19         **MR. ANTOINE:**  One moment, please.

20         **MS. KUBIAK:**  And Judge --

21         **THE COURT:**  Please.  Please, Ms. Kubiak,

22  please?  I want to try to do this as dispassionately

23  as possible.

24         **MS. KUBIAK:**  I understand.

25         **THE COURT:**  And I don't want to get into a

1    back and forth.  I understand that emotions are very

2    high.  I understand that the stakes are very high.

3    But I want to do this as dispassionately and without

4    emotion.  So I'm trying my best to do that.

5             MS. KUBIAK:  Thank you, Judge.  I'm sorry.

6             MR. ANTOINE:  I appreciate the Court's

7    indulgence.  Just a couple more minutes, Judge.

8             Oh, yeah, Page 26.  Page 26, starting with

9    Line 11, there was a whole portion of her -- of

10   Counsel's closing argument in which she talks about

11   going to college in Philadelphia.  "I went to college

12   in Philadelphia.  I lived in the city for ten years.

13   I'm telling you, almost every single house in every

14   single neighborhood I lived in had signs on their

15   doors, on their fences about where to leave packages."

16            We don't think that's appropriate either,

17   Judge.  We think Counsel is testifying.

18            THE COURT:  Okay.

19            MR. ANTOINE:  That was not elicited -- there

20   is no evidence of that in the record whatsoever.

21            THE COURT:  Okay.  What else?

22            MR. ANTOINE:  I don't have the reference

23   offhand quite yet, but there was also an argument made

24   to the jury, in fact several references, to agents

25   being hired guns in this case.

1          **THE COURT:**  Find a reference for me, please.

2          **MR. ANTOINE:**  Page 10, starting with

3     Line 22, "you have an agent, a case agent, who's

4     telling you these are the things we find, this is what

5     we go in to look for.  And then Agent Winters comes,

6     our paid gun here" -- which is not true -- "hired by

7     the Government" -- also not true -- "to come in and

8     fix their entire case that they can not prove to you."

9     We think that's problematic as well.

10          **THE COURT:**  Okay.  Anything else?

11          **MR. ANTOINE:**  Your Honor, if you would like

12     to move on, we can, but I can continue to search the

13     record for additional --

14          **THE COURT:**  Yeah, I would like you to -- so

15     -- but here's the issue.  Here's the issue, and I

16     would like to come full circle back.

17          The reason Mr. Watkins was hot was because I

18     denied the motion to reopen the Government's case

19     because he said, repeatedly, that the Defense was

20     using my ruling as both a sword and a shield, in his

21     words.  That they were using my ruling as a sword and

22     a shield.

23          And on the issue of the cell phone, I've

24     only heard one excerpt from Ms. Benz's summation that

25     you've referred to.  And, I think, that after our

1    colloquy, we've agreed that that excerpt was entirely

2    appropriate and accurate.  That is, that you presented

3    no evidence linking the phone number to a specific

4    phone.

5           The reason that you presented no evidence

6    linking it is because I precluded you from putting

7    that in, but that doesn't mean that she can't argue

8    that you presented no evidence linking that.  She

9    didn't say, the Government doesn't have any evidence.

10   She didn't say, there is no evidence.  She said, they

11   gave you no evidence.  That's true.

12           **MR. ANTOINE:**  Judge --

13           **THE COURT:**  It's accurate.  It's a fair

14   argument.  So tell me now --

15           **MR. ANTOINE:**  I can respond to that, Judge.

16           **THE COURT:**  Let me finish, and then you can

17   respond.  Let me finish first, and then you can

18   respond.

19           **MR. ANTOINE:**  Certainly.

20           **THE COURT:**  So the one issue on which

21   Mr. Watkins was so angry, that when he walked out of

22   the courtroom, he slammed the door, made it very clear

23   to everybody that he was extremely unhappy with me,

24   that one issue.  I'm not hearing anything in this

25   summation that is problematic.  Tell me why I'm wrong?

1          **MR. WATKINS:**  Your Honor, may I say

2     something?

3          **THE COURT:**  Sure.

4          **MR. WATKINS:**  It was not that one issue.  It

5     was not just that one issue.  I explained that to the

6     Court, why I was upset.  We're going through reasons

7     through this transcript right now why I was upset.  I

8     didn't intend to say anything, but I wanted to make

9     the record clear, that it was not that singular issue

10    that made me upset.

11         **MR. ANTOINE:**  I was going to say the same

12    thing, Judge.

13         **THE COURT:**  Okay.  Again, can you hold that

14    down for one second?  I'm not going to say anything,

15    but I just want to see something.

16         **MR. ANTOINE:**  Okay.

17         **THE COURT:**  Okay.  Go.

18         **MR. ANTOINE:**  Yes, thank you, Judge.  No, we

19    do not believe, and it was our position it wasn't that

20    single issue.  In fact, we've gone through, and I can

21    continue to find additional quotes and additional

22    things we find problematic in Counsel's closing.

23         **THE COURT:**  Did you -- did you object to any

24    of them?

25         **MR. ANTOINE:**  We've identified --

1          **THE COURT:**  Did you object to any of those?

2          **MR. ANTOINE:**  Not at the time, Your Honor.

3     We -- we've identified --

4          **THE COURT:**  Did you object to them when I

5     gave you a chance when we took a break, anything you

6     want to put on the record?  Was there anything put on

7     the record then?

8          **MR. ANTOINE:**  Your Honor is well aware that

9     -- no, we didn't object.  However, we'd like to think

10    that it's -- it's within -- you're right, we didn't

11    object.

12          But if I could go back?

13          **THE COURT:**  Okay.

14          **MR. ANTOINE:**  It wasn't just that one issue.

15    We've identified a litany of different things that

16    admittedly upset the Prosecution in this case.  It

17    wasn't just that one ruling.  And so --

18          **THE COURT:**  Would you agree with me --

19          **MR. ANTOINE:**  -- what I would like the Court

20    to consider, is that my Co-Counsel's rebuttal came at

21    the heel of a closing argument that we all found to be

22    extremely problematic, due to many of the things we've

23    just identified to the Court, and plenty more that we

24    can continue to search for.

25          And so -- and so this case I cited to you,

1    and the reason why I keep going back to it, is because

2    it's crucial.  It identifies specifically what the,

3    the context that -- that we're having this hearing on

4    today.  When you have a trial, you have a rebuttal,

5    you have closing arguments, emotions are extremely

6    high.  And that case stands for the proposition, that

7    you should not ascribe, to the words of Mr. Watkins,

8    its worse meaning.  So we're asking you to take us at

9    our word.  It's, you know, we approach this in good

10   faith.

11           Their burden is very, very high, Judge.

12   They're asking you to declare a mistrial in this case,

13   whether it is with prejudice or without prejudice.

14   They have an extremely high burden.  All of the case

15   law I read overnight -- like you said, none of us got

16   any sleep.  I didn't either.

17           All of the authorities I have read, it

18   suggests it is an extremely high burden, and the

19   reason why it's so high is the misconduct on the part

20   of the Prosecution must be so severe as to deprive the

21   Defendant of a fair trial.

22           The reason why the Prosecution is so upset

23   is because we don't think we had a fair trial in this

24   case.  We think most of the rulings -- we think a

25   default position of the Court has been to acquiesce to

38

1     the Defense.

2           And so we -- the burden is so high that they

3     have to demonstrate, and that's their burden, not

4     ours.  They have to demonstrate that the misconduct on

5     the part of the Prosecution is so severe as to deprive

6     the Defendant of a fair trial.  We submit it's the

7     opposite.  We think we've been deprived of a fair

8     trial.

9           And so, you know -- and by the way, the

10    cases that I read, the cases that I saw last night,

11    they suggest that, for example, in -- it's extremely

12    rare when -- when cases declare mistrial in these

13    circumstances.  Very extreme, and they usually involve

14    a pattern of misconduct on the part of the Prosecution

15    from the beginning to the end.  Where, for example,

16    the Court has admonished the Prosecution, do it again,

17    admonish the Prosecution, do it again, misconduct in

18    front of the jury all throughout the trial.  Those are

19    the context.  Those are the cases in which mistrials

20    have been declared.  We're talking here about two

21    statements that, admittedly, were problematic.  We

22    admit that.  And I submit to you that --

23           **THE COURT:**  There's at least four

24    statements, actually, but --

25           **MR. ANTOINE:**  Judge, I submit to you that

1  they came at the heel of a very problematic closing

2  argument on the part of Defense.  We're very upset

3  about it.  They were done contemporaneously.  They

4  were done while Counsel was improvising.  He had no

5  notes.  It's not as if they were written down,

6  contemplated upon, thought about for a long time.  He

7  was speaking off the cuff, and they came out in a way

8  that he wished they hadn't.

9         And so we're asking you not to consider them

10  in their worst light.  And it's our position that it's

11  -- it's -- it doesn't rise to the point to the level

12  where mistrial needs to be declared in this case.

13         **THE COURT:**  Would you agree with me -- you

14  said there's all this, this whole host of things that

15  had Mr. Watkins angry, and Mr. Watkins has just told

16  me that there is a whole host of things that had him

17  angry.

18         Would you agree with me, that when

19  Mr. Watkins and I discussed his desire to reopen the

20  proof, the only issue that was discussed was the phone

21  number and the cell phone?  And I'm referring now to

22  Pages 29 through 31.

23         **MR. ANTOINE:**  Judge, candidly, it's what

24  happened.  It's on the record.  So Counsel did ask to

25  reopen the proof in this case.

1          THE COURT:  And I said no.

2          MR. ANTOINE:  The Court declined.

3          THE COURT:  And he got angry.

4          MR. ANTOINE:  Well, Judge, I wouldn't

5    characterize it as him being angry.

6          THE COURT:  You don't think that when he

7    left this courtroom he was angry?

8          MR. ANTOINE:  I think Counsel was upset.

9          THE COURT:  Pardon me?

10          MR. ANTOINE:  I think Counsel was upset.

11          THE COURT:  He slammed the door twice.  He

12    slammed the inside door, and he slammed the outside

13    door.  You didn't hear that?

14          MR. ANTOINE:  Judge, I am not going to

15    question what you saw.  But I -- what I saw was that

16    Counsel opened the door, and perhaps he didn't hold it

17    as it was closing.

18          THE COURT:  No, no.

19          MR. ANTOINE:  And he just walked out.  I

20    don't believe he slammed the door, Judge.

21          THE COURT:  No.  Both those doors were

22    slammed as Mr. Watkins left the courtroom.

23          MR. ANTOINE:  I will not question the

24    Court's characterization of what happened.  I -- I

25    wasn't, you know, privy to that.  That's not what I

1    saw.

2           **THE COURT:**  I told myself when I came back

3    in not to say anything because I've been trying to

4    maintain my composure during the course of this trial,

5    too.  And I've been successful most times, and I was

6    successful.  And I'm happy I was successful then.

7    That's certainly what I saw, and what I heard.

8           Okay.  Is there anything else the Government

9    would like to say?

10          **MR. ANTOINE:**  Certainly.  Judge, the only

11   other thing I would point out to the Court is, it's a

12   few comments, they did not permeate throughout the

13   trial.  Counsel immediately apologized.  The Court

14   gave the jury an immediate curative instruction.  We

15   believe that's sufficient.  And anything more than

16   that, Judge, would be inconsistent with the body of

17   authority in which mistrials have been given.

18          **THE COURT:**  Okay.  Who's going to argue?

19          **MS. KUBIAK:**  Judge, I will start.  I think

20   first and foremost, we just spent an hour, I think, on

21   a recitation of the Government's problems with

22   Ms. Benz's summation.  However, if the Court reviews

23   the transcript, there's not one objection.  And

24   Counsel clearly has no problem speaking, and he can

25   clearly articulate arguments with respect to the

1    summation.  They did not do that.

2         And Judge, I understand that we try not to

3    have to object, but when objectionable conduct occurs,

4    you must speak.  And I had no problem speaking

5    throughout.  I objected, I think, once or twice during

6    the initial closing with respect to Mr. Watkins, and I

7    objected multiple times throughout the entirety of the

8    rebuttal.

9         And I think to characterize what transpired

10   prior to the rebuttal, and not even acknowledging that

11   he stormed out of the courtroom, that he slammed the

12   door, he walked out there, he was clearly irate with

13   the Court and the Court's ruling.  That is what

14   triggered that rebuttal.

15        **MR. ANTOINE:**  Judge, if I --

16        **MS. KUBIAK:**  That -- can I speak?

17        **MR. ANTOINE:**  It would shed some light -- I

18   was interrupted as well.  But if it would shed some

19   light, I can explain why we didn't object.

20        **THE COURT:**  I'm sorry?

21        **MR. ANTOINE:**  I can explain why --

22        **MS. KUBIAK:**  Judge --

23        **MR. ANTOINE:**  -- a lot of these things were

24   not objected to, if it would shed some light?

25        **THE COURT:**  No.  Go ahead.  Finish.  You can

1    explain afterward.  I will give you another chance.

2    We will go through this, as I said, as systematically

3    and objectively and as dispassionately as possible.

4              **MS. KUBIAK:**  I forgot where I was after I

5    was interrupted.

6              So, it was clear Mr. Watkins was irate with

7    the Court.  Why?  Because of the Court's ruling.

8              And what has transpired throughout the

9    course of this trial, is when Counsel doesn't get

10   their way, they persist and they persist and they

11   persist and they have a temper-tantrum until they try

12   to get their way.  And that has been permeating this

13   entirety of the trial.

14             That was, I believe, the fifth time that the

15   Government has sought this Court to reverse its

16   ruling.  And this is what he tells the Court, "you

17   keep ruling on this issue, they keep using it as a

18   sword.  This is improper.  It is improper.  And the

19   Government has no remedy here.  The Government's

20   entitled to a fair trial.  Preclusion was not the

21   right remedy.  Preclusion is the remedy if there's bad

22   faith.  There was no bad faith.  Preclusion's not the

23   property remedy.  They sought preclusion, you granted

24   it.  I respect that, but preclusion's not the remedy.

25   We continue to comment on it, continue over and over

1    and over and over."

2             That tells you that that is exactly what he

3    is upset about.  That is exactly what he's infuriated

4    about.  The Court's ruling.  He storms out, and in

5    response to not getting his way, he goes into a litany

6    of prosecutorial misconduct during the rebuttal.

7             And I think the Court said four.  There were

8    probably others, improper characterization.  I mean, I

9    could have objected to every line throughout the

10   entirety of the rebuttal.

11            And if we're going to talk about the record,

12   opening statements.  We had an issue there.  First

13   witness, we had an issue there.  First mistrial.

14            Then we transfer to the next important

15   witness, which is Agent Turner, and we have -- and

16   another mistrial with a request for prejudice.

17            If you look at the record in its entirety,

18   it permeates misconduct.  And I've looked in our

19   resources.  I mean, it hits every single button that

20   there could possibly be.  It's severe.  It is

21   absolutely severe.  It's pervasive?  Yes.  Pattern?

22   Yes.  Every single subheading about improper

23   commentary during a closing or rebuttal, these check

24   every one of those boxes, Judge.

25            You know, and I -- their reasoning for not

1    objecting and coming in here and saying to the Court,

2    oh, well, we just didn't do it, so now we get to

3    excuse our behavior and -- and ask you to forgive us

4    because we now know we have a situation that we can't

5    overcome.  I don't think that's appropriate.  I think

6    that dismissal with prejudice cries out in this case,

7    Judge.

8              And the cases that the Government cites, if

9    you take even one of those things and you put those in

10   those cases, it's prejudice.  We have six or seven,

11   I've lost count, items, that require that.

12             And I know that Ms. Benz is going to want to

13   speak, and I am going to let her do that.  No?

14             It wasn't off the cuff, Judge.  It was not

15   off the cuff.

16             And then I think what's also more

17   problematic, is you'll note after the rebuttal,

18   Mr. Watkins' steps outside, realizes he has a problem,

19   because it is, in fact, in response to the Court's

20   ruling, and let's talk about what he does.  He comes

21   back in here, as he has throughout the entirety of the

22   course of the trial, and blames the Defense.  It 's

23   because of something that happened a month ago.

24   That's why I did it.

25             When we are arguing with respect to

1     preclusion, it's our fault that we didn't have access

2     to evidence.  It's our fault.  Everything's our fault.

3              **THE COURT:**  Can I ask a question?

4              **MS. KUBIAK:**  Yes.

5              **THE COURT:**  The item he cited was Docket

6     Number 96?

7              **MS. KUBIAK:**  Yes.

8              **THE COURT:**  I read that.

9              **MS. KUBIAK:**  Yes.

10             **THE COURT:**  I denied your motion on that.

11             **MS. KUBIAK:**  Correct.

12             **THE COURT:**  Okay.  Go ahead.

13             **MS. BENZ:**  And actually, Judge, in denying

14    your motion during oral argument, you specifically

15    told the Prosecutors that you did not think they did

16    anything wrong or that they had in any way

17    manufactured evidence, and that you believed it was

18    our intent in that filing, if anything, to accuse the

19    Government as a whole, but not these two individual

20    prosecutors.  But that was not good enough for them.

21             **MR. ANTOINE:**  Judge, the reason --

22             **THE COURT:**  I read it.  I read it again.  I

23    read it again before I came out here this morning,

24    because I, honestly, it was not something that I

25    remembered quite well.

1            But -- but, and now that you bring it up,

2       Ms. Benz, now I do remember it.  But I do remember

3       denying the motion, and when I read it this morning, I

4       really didn't read anything in there as accusing the

5       Prosecutors of anything.

6            **MR. ANTOINE:**  Judge, did you read the part

7       that --

8            **MS. KUBIAK:**  And, Judge --

9            **MR. ANTOINE:**  Judge, did you read the part

10      that said that the Government agents manufactured

11      evidence at the direction of the Prosecutors?  Did you

12      read that part?

13           **THE COURT:**  No, I guess I didn't.  I guess I

14      didn't.  Hang on.

15           **MS. KUBIAK:**  Judge, I mean, I think that

16      that -- there is a redacted version of that document,

17      and I think we can talk separately with respect to

18      what was supposed to happen with Docket Number 96.

19           **MR. ANTOINE:**  I never saw that part.

20           **MS. KUBIAK:**  But you note that Agent Turner,

21      when we had the mini Miranda hearing, in fact

22      indicated that he had provided multiple statements to

23      the Prosecution that were never disclosed.

24           So when we look at everything in its

25      entirety, where was that disclosure?  They had known

48

1    that he was going to make that highly prejudicial,

2    undisclosed statement.  They had anticipated it and

3    set it up during the trial.  That wasn't disclosed.

4    We still, as we sit here today, do not know all of the

5    things they failed to disclose to us with respect to

6    that information that Special Agent Turner gave to

7    them.

8            He tells us in his testimony, that he had

9    met with them, and he told them everything.

10           **MR. ANTOINE:**  So --

11           **MS. KUBIAK:**  Including -- can I finish?

12           **MR. ANTOINE:**  Yeah, you may finish.

13           **MS. KUBIAK:**  Including the statement with

14    respect to ripping up the package in the rafters.

15    That was never disclosed to us.  And at side bar,

16    Government Counsel indicated he didn't even know

17    anything about that.

18           **MR. ANTOINE:**  Judge, I'm confused.  First

19    Counsel said that she didn't accuse the Prosecutors

20    directly, and now she appears to be justifying --

21           **MS. KUBIAK:**  I am not justifying --

22           **MR. ANTOINE:**  -- the statement --

23           **THE COURT:**  Wait.

24           **MS. KUBIAK:**  -- the document.

25           **THE COURT:**  Stop.  Mr. Antoine, go ahead.

1          **MR. ANTOINE:**  No, I'm just not following the

2   logic.  First, that Counsel declines that she accused

3   the Prosecutors personally, yet she appears to be

4   justifying why the Prosecutors are responsible.  So I

5   just fail to follow the logic.

6          **MS. BENZ:**  Let me clarify the logic.  Let me

7   clarify it.  It's because when that filing was made,

8   at that time, once it was heated and we realized what

9   had transpired, at that time it was the understanding

10  of Defense Counsel that for the first time ever, these

11  statements were being disclosed.  Those statements

12  were never memorialized by Agent Turner or any other

13  agents.  And so we filed it, and we asked for a

14  hearing in order to try to prevent what happened

15  during this trial.

16          Now we know, through Agent Turner, who

17  testified under oath, that he actually disclosed not

18  just those two statements, but also the package in the

19  rafter statements, and also multiple others to

20  Counsel.

21          So that's why we are now saying what we're

22  saying, which is they did know that there were more

23  statements because that's what their agent told us.

24          So we can't reconcile those two things.

25  Either the agent told the Prosecutors that those

1    statements existed, and the Prosecutors didn't turn

2    them over, and then told Your Honor they didn't know

3    about them, or Agent Turner lied on the stand.

4          Either or, it doesn't -- it's not great.

5    It's not great.  I don't love making these arguments

6    here in court, but both of those things can't be true.

7    They can't possibly be true.

8          **MR. ANTOINE:**  Judge, with respect to -- with

9    respect to -- you want to add something?

10         **MS. KUBIAK:**  Just for the record, Judge.  It

11   was my understanding that Docket Number 102 was to

12   replace Docket Number 96, and redact that portion, and

13   that had resolved the issue.

14         **THE COURT:**  Okay.

15         **MS. KUBIAK:**  Unbeknownst to me, that didn't

16   occur.  And if the Government had issues when that was

17   first filed, the first time we heard about it was on

18   October 20th at 7:30 in the evening.  That was the

19   first time I heard from the Government.  So that was

20   12 days after that document was filed, that this --

21   this --

22         **THE COURT:**  But in any event, the motion

23   made by that document item was denied, and the

24   evidence came in.

25         **MS. KUBIAK:**  Correct.

1                **THE COURT:**  Okay.  Go ahead, Mr. Antoine.

2                **MR. ANTOINE:**  Judge, we can -- we can

3      litigate everything that happened from the beginning

4      of this trial to the end.  I think what we're here to

5      discuss is whether, I mean, motion's been filed,

6      Government responded to motions.  We're here to decide

7      whether or not a mistrial is warranted in this case.

8                **THE COURT:**  Okay.  Is there anything further

9      you would like to say on that topic?

10               **MR. ANTOINE:**  Judge, I think the Court said

11     it best yesterday.  The Court said yesterday, you

12     didn't believe there's been any bad faith on the part

13     of the Government.  There's no bad faith, nothing was

14     done intentionally here.  Emotions run high in every

15     trial, sometimes higher than others.  This case has

16     been particularly rife with high emotions.

17               And again, this is just not a case where

18     mistrial is -- is appropriate.  And so -- so I think

19     that the Court's initial inclination yesterday not to

20     declare a mistrial --

21               **THE COURT:**  That was not my inclination.  My

22     inclination was not to declare a mistrial with

23     prejudice.  Although I'm rethinking that now.  But my

24     inclination was not, not to declare a mistrial.

25               **MR. ANTOINE:**  Okay.

1          **THE COURT:**  I didn't say that.

2          **MS. BENZ:**  Your Honor, if I may?

3          **THE COURT:**  Hang on.  Hang on.  Go ahead.

4          **MS. BENZ:**  Thank you.  I -- I think that the

5     main issue here is, and in reading -- I've never heard

6     anything in closing statement from a Prosecutor that

7     was even close to as egregious to one of the first

8     things that Mr. Watkins said.  And that was in direct

9     response to his anger.  It was in direct response to

10    my closing argument, to him storming out, to him

11    yelling at Your Honor, about why your pretrial ruling

12    was incorrect.  There is absolutely nothing I did in

13    that closing argument that wasn't fair game.

14          And it terrifies me for my future clients,

15    to try a case against this office because they don't

16    think we should be making good enough arguments,

17    because they have such a thin skin, that they're going

18    to get up in rebuttal and tell a jury that I know my

19    client's guilty.  How dare they.  How dare they.

20          **THE COURT:**  Mr. Antoine, you get the last

21    word.

22          **MR. WATKINS:**  Judge, may I be heard?

23          **THE COURT:**  Mr. Watkins, you can be heard.

24          **MR. WATKINS:**  Judge, I've been sitting here,

25    and everyone's been talking about me, and saying that

1    everything that happened was in my response to anger

2    at a ruling.  It's not true.

3            Was I angry?  Yes.  Was I upset that I felt

4    like our case was prejudiced by Defense Counsel using

5    your ruling as a sword and a shield?  Yes.  I was.

6    You denied that.  I accepted that.

7            But this case is about more than that.  Why

8    I was upset was about more than that.  The -- the

9    animus has permeated throughout this trial, from the

10   very beginning.  Before this case was even before

11   Your Honor, at the magistrate level.  It has permeated

12   for the entirety of this proceeding.

13           I am not thin-skinned.  I resent that.  I am

14   human, though.  And I can only take so much.  So many

15   ad hominem attacks, so many allegations of

16   impropriety, so many, and I do take exception to

17   those.

18           And I -- I think that -- I understand your

19   rulings from yesterday.  I understand that the things

20   that -- some of the things that I said in my rebuttal

21   were improper.  I accepted that.  I accepted it

22   yesterday, I accept it again this morning.  I

23   apologized for it yesterday.

24           But, what I will not do is sit and listen to

25   me being called thin-skinned because of something that

1    happened that was patently improper.  And I understand

2    that you, again, I understand that you denied that

3    motion, Your Honor.  I do.  And the implication of

4    saying that it was never responded to or that it was

5    never said, I said it in my response to that motion,

6    that the accusations were baseless, they were false,

7    and they were not based on fact or supported by law.

8    I don't know what else --

9            **THE COURT:**  That, obviously, doesn't give

10   you license --

11           **MR. WATKINS:**  It does not.

12           **THE COURT:**  -- to tell the jury that the

13   Defense Counsel knows that their client is guilty.

14   That, obviously, does not give you license to tell the

15   jury that, I know the Defendant is guilty, I know the

16   Defendant's guilty beyond a reasonable doubt.

17           And the question that I have to answer now

18   -- there are a few questions.  One is whether this

19   Defendant can possibly get a fair shake from this jury

20   after hearing those things.

21           **MR. ANTOINE:**  Judge, if I may respond to

22   that?  We cite in our filings multiple cases in which

23   juries have been told the same --

24           **THE COURT:**  Let me ask you about this case.

25           **MR. ANTOINE:**  -- and a curative instruction

1    has been enough.

2            THE COURT:  How about -- let me ask you

3    about --

4            MR. ANTOINE:  Why is this case any

5    different?

6            THE COURT:  Let me ask you about United

7    States versus Friedman, where the Government made this

8    argument:

9            "And some people would have you pull the

10   wool over your eyes because while some people, Ladies

11   and Gentlemen, go out and investigate drug dealers and

12   prosecute drug dealers, and try to see them brought to

13   justice, there are others who defend them, try to get

14   them off, perhaps even for high fees."  And then the

15   Prosecutor said that "the Defense Counsel will make

16   any argument he can to get that guy off."

17           Now, those statements are general -- the

18   first one is a general statement about Defense Counsel

19   in drug cases.  Not a specific statement, that the

20   Defense Counsel here knows that their client is

21   guilty.  That -- that's not --

22           And the Second Circuit said with respect to

23   that, each case must be carefully assessed as to its

24   individual circumstances, and we've done so here.

25   Here, the gravity of the misconduct was substantial.

56

1    The District Court response, which was a curative

2    instruction, was insufficient to preclude a

3    significant risk of prejudice, and we cannot

4    confidently say that a conviction would surely have

5    been obtained in the absence of the misconduct.  The

6    conviction is reversed, and a new trial is ordered.

7            Tell me why this is any different than

8    Friedman?  Other than the fact that not only did he

9    say the Defense Counsel knew that their client was

10   guilty, but he said, "I know the Defendant's guilty, I

11   know he's guilty beyond a reasonable doubt."  So there

12   is a difference.

13           Tell me why, if a new trial was required in

14   Friedman, why, at least, a new trial isn't required

15   here?

16           **MR. ANTOINE:**  With respect, I haven't had a

17   chance to review -- is it Freeman?

18           **THE COURT:**  Friedman.  United States versus

19   Friedman.  I thought it was in the papers?

20           **MS. KUBIAK:**  It was.

21           **MR. ANTOINE:**  But I can tell -- I can

22   cite --

23           **THE COURT:**  It's in the papers, isn't it?

24           **MS. BENZ:**  Yes, it is, Judge.

25           **MS. KUBIAK:**  Yes, it is, Judge.

1           **MS. BENZ:**  It's a Second Circuit case.

2           **MR. ANTOINE:**  Judge, I can also cite you to

3    cases where, for example, comments were made,

4    including that the Prosecutor's opinion of the

5    Defendant's guilt and a statement that the perpetrator

6    of the crime was an animal, which is far worse than

7    what happened here, didn't -- the Court found -- the

8    Supreme Court found it did not infringe on the

9    Defendant's right because a curative instruction was

10   given.

11          And so I can't speak specifically to

12   Friedman because, candidly, I haven't had a chance to

13   review that.  But I have reviewed other cases where

14   similar things have happened, in fact worse things

15   have happened, where the Prosecutor commented on -- on

16   the Defendant's guilt personally.  Even calling the

17   Defendant names such as a dog, and a curative

18   instruction was enough.

19          **THE COURT:**  Where are those cases?

20          **MS. BENZ:**  Your Honor, this is --

21          **MR. ANTOINE:**  Donnelly versus DeChristoforo.

22   Darden versus Wainwright.  It's in the Government's

23   filing, Judge.

24          **THE COURT:**  Okay.

25          **MS. BENZ:**  Your Honor, this is the issue

1    here.  The fact that he just said calling a Defendant

2    an animal is far worse than the conduct here, that's

3    the issue.  They don't even get it.

4         **MR. ANTOINE:**  It's coupled.  It's not all

5    that happened in that case.  You have to read it.  You

6    have to take a look at it first.

7         **THE COURT:**  I am going to go take a look at

8    those statements.

9         **MS. BENZ:**  I am talking about Mr. Antoine's

10   statement that it's far worse than telling the jury,

11   as an All Mighty Assistant United States Attorney, a

12   Prosecutor with so much power, pointing to this table

13   and saying, they know their client is guilty, is the

14   worst thing you can do --

15        **MR. ANTOINE:**  The same thing has happened in

16   other cases.

17        **MS. BENZ:**  -- as a Prosecutor.

18        **THE COURT:**  I'm sorry?

19        **MR. ANTOINE:**  The same thing has happened in

20   other cases.

21        **THE COURT:**  The cases -- give me the cases

22   you want me to look at?

23        **MR. ANTOINE:**  Judge, it's in the, 477 U.S.

24   168, 1986.  Also Donnelly versus DeChristoforo, 416,

25   U.S. 637, 1974 case.

59

1              **MS. BENZ:**  Richard, can you say the first
2    one again?

3              **MR. ANTOINE:**  And United States versus
4    Young, 470 U.S. 1, 1985.  Prosecutor made similar
5    statements with regard to the guilt of the Defendant.
6    It's in our filings, Judge.

7              **THE COURT:**  So -- so are you telling me the
8    cases that you cite in Subsection A of -- so on pages
9    5 and 6, are those the cases you're talking about?

10             **MR. ANTOINE:**  Yes, sir.

11             **THE COURT:**  Okay, great.  I am going to go
12   look at those cases right now, and I will be back.

13             **DEPUTY CLERK:**  All rise.

14             (Off the record at 10:32 a.m.)

15             (Back on record at 11:08 a.m.)

16             **DEPUTY CLERK:**  All rise.

17             **THE COURT:**  You can be seated.

18             (Defendant entered courtroom.)

19             **THE COURT:**  Okay.  Go ahead.

20             **DEPUTY CLERK:**  We are back on the record for
21   the continuation of the jury trial in Case
22   Number 20-cr-191.  United States of America versus
23   Juan Padua.

24             All Counsel and parties are present.

25             **THE COURT:**  Okay.  I've reviewed the case as

1    cited by the Government.  None of them have the

2    problems that we have here.

3          None of them have the Prosecutor first

4    saying that Defense Counsel knows that Defense

5    Counsel's client is guilty, and then immediately after

6    that objection is sustained, Counsel saying, "I know

7    he's guilty.  I know he's guilty beyond a reasonable

8    doubt."  And none of those cases have those things

9    coupled with a statement that evidence presented by

10   the Defense is false.  Those are the most egregious

11   statements in the rebuttal here.

12         Two of the cases cited by the Government,

13   Darden versus Wainwright, and Donnelly versus

14   DeChristoforo, are cases where, as the Supreme Court

15   noted in the Donnelly case, the standard is the narrow

16   one of due process, and not the broad exercise of

17   supervisory power that it would possess in its own

18   trial court.

19         So those cases are distinguishable for that

20   reason.

21         And I just note that in the Young case that

22   the Government cites, a case where, I think, the

23   Supreme Court ended up that overwhelming evidence of

24   guilt, eliminated the doubt that the Prosecutor's

25   remarks unfairly prejudiced the jury, the Court said

1    this:  "The Prosecutor's vouching for the credibility

2    of witnesses and expressing his personal opinion

3    concerning the guilt of the accused pose two dangers;

4    such comments can convey the impression that evidence

5    not presented to the jury, but known to the

6    Prosecutor, supports the charges against the

7    Defendant, and can thus jeopardize the Defendant's

8    right to be tried solely on the basis of the evidence

9    presented to the jury, and the Prosecutor's opinion

10    carries with it the imprimatur of the Government, and

11    may induce the jury to trust the Government's judgment

12    rather than its own view of the evidence.

13          So those things are particularly troubling

14    here.  And I think that the closest case factual to

15    this case, is the Friedman case that I cited.  And in

16    that case, a District Court was reversed for not

17    granting a mistrial under circumstances like this one.

18    It's a Second Circuit case from 1990, United States

19    versus Friedman.  And I've already referred to that.

20          In addition, let me say what the Court of

21    Appeals Second Circuit said in United States versus

22    Modica, which was a Second Circuit case in 1981.  This

23    appeal, like far too many reaching this Court, centers

24    on improper statements made by a Prosecutor in his

25    summation to a jury.  Such misconduct has gone largely

62

1    unremedied.  For Appellate Courts are understandably

2    reluctant to reverse convictions merely to discipline

3    Prosecutors.  This case, too, is one in which the

4    Prosecutor's improper remarks don't warrant reversal

5    of the conviction.

6            And the Court notes, that we find ourselves,

7    this is on Page 1182.  We find ourselves in a

8    situation with which this Court is all too familiar; a

9    Prosecutor has delivered an improper summation,

10   despite this Court's oft-expressed concern over the

11   frequency with which improper summations occur.  One

12   can safely say that the warnings alone have proved

13   insufficient.

14           And the Court then notes, at Page 1184, that

15   this Court has repeatedly stated that the task of

16   ensuring that attorneys conduct themselves pursuant to

17   a recognized ethical precepts, to recognized ethical

18   precepts, falls primarily upon the district courts.

19           So in this case, given the fact that

20   Mr. Watkins said at Page 2, "let's talk about some of

21   the testimony we heard.  We saw a witness from the

22   Defense sit right there on the stand, and he told you,

23   I took pictures of that staircase in the back of the

24   house that leads to the attic.  And he was asked by my

25   Co-Counsel, well, where are those pictures?  Well, I

1    gave them to the Defense.  Did you ever see them?  I

2    didn't see them.  All you have to go on is his word.

3    A word of a biased witness."  He goes on to say, "I

4    implore you to ignore that because I will say, flatly,

5    it's not true."

6         And then later he said, "what you saw from

7    the Defense was the kitchen sink approach.  We're

8    going to throw everything at you, just throw enough

9    stuff up against the wall, something will stick."

10        He goes on to say, "I trust that it won't --

11   I don't trust that it won't, I know it won't because

12   those were the musings of a desperate team.  Desperate

13   because they know their client is guilty."  Objection.

14   Sustained.  And then immediately after that, "I know

15   he's guilty.  I know beyond a reasonable doubt he's

16   guilty."

17        Those statements by the Prosecution

18   prejudice the Defendant's right to a fair trial, and

19   did so in a way that I do not believe can be cured by

20   a curative instruction.  So for that reason, I am

21   granting a mistrial.

22        Now this is the third motion for a mistrial

23   in this case.  The first time the motion was made, it

24   was made, I believe, with the proviso that only if I

25   were to grant a mistrial with prejudice, did the

1    Defendant want to pursue that.  I denied that because

2    I didn't want to grant it with prejudice.

3            The second time it was a straight motion for

4    a mistrial, and I denied that.

5            Last night I said I was not inclined to

6    grant a mistrial with prejudice.  But what I heard

7    this morning, is that Mr. Watkins was upset with my

8    ruling denying the Government the right to reopen its

9    case.  He was upset with the notion that he did not

10   think that the Government got a fair trial, and he,

11   therefore, made those egregious comments in his

12   summation.

13           In light of those arguments, and in light of

14   what the Government has represented to me this

15   morning, I think I have little option, other than to

16   find that those statements were intentional, and to

17   grant a mistrial with prejudice, especially because

18   those comments were so egregious, that a seasoned

19   Prosecutor like Mr. Watkins must have known that they

20   were improper.

21           I understand that this is an extraordinary

22   remedy.  I understand that it is to be granted only in

23   very rare circumstances, exceedingly rare

24   circumstances, but I find that what occurred last

25   night, and then the arguments that were made this

1    morning, lead to the only result that I think is

2    appropriate here, and that is a mistrial with

3    prejudice.

4            I do not make this decision lightly.  It is

5    something that I have thought about all night, and

6    it's something that I have thought about now.  I've

7    considered the Government's arguments, but those

8    arguments lead me to the conclusion that the

9    misconduct was intentional.  And when the misconduct

10   occurred, I knew that the misconduct was egregious.

11           I said yesterday, and I will say again,

12   there are rules, and violation of those rules have

13   consequences.  I say that to Defendants who violate

14   the conditions of their supervised release, and

15   violate the conditions of their bail, on a regular

16   basis.  I say it every day to them.  And I say it

17   today to the Government.  How can I say that to

18   Defendants who are not schooled in law, if I don't say

19   it to Prosecutors who are not only schooled in the

20   law, but who are seasoned, and who are held to a

21   higher degree of ethics than Defendants and Defense

22   Counsel.

23           The Government attorneys have an obligation

24   to do justice.  Not just to win the case, but to do

25   justice.  And when they don't think they get a fair

1    trial, I understand that.  They can be upset with

2    that, they can be upset with the judge, they can think

3    the judge is an idiot.  I get that, and I grant them

4    that.  But what they can't do is react to that by

5    making egregious statements like they did here,

6    denying the Defendant a fair trial.

7            That is my ruling.

8            **MS. KUBIAK:**  Thank you, Your Honor.

9            **THE DEFENDANT:**  Thank you.

10           **THE COURT:**  Anything from the Defense?

11           **MS. KUBIAK:**  I just ask that Mr. Padua be

12   released immediately from custody, Judge.

13           **THE COURT:**  That motion is granted.

14           Anything from the Government?

15           **MR. ANTOINE:**  Judge, I would ask that --

16   that you stay your decision until after the -- the

17   jury deliberates on the proof that they have heard in

18   this case.

19           **MS. KUBIAK:**  The Judge has made his ruling.

20           **THE COURT:**  Yeah, I've made my ruling.  I am

21   going to send the jury home.

22           Anything else from the Government?

23           **MR. ANTOINE:**  Nothing further, Judge.

24           **THE COURT:**  Okay.  Pat, let's bring the jury

25   out, please.

1              (Jury was seated at 11:21 a.m.)

2              **THE COURT:**  Okay.  The record will reflect

3      that all our jurors are present.

4              Welcome back, Folks.  Your duties are done.

5      I have granted the Defendant's motion for a mistrial

6      because of improper comments that I thought were made

7      in the summation yesterday.

8              And so your duties are complete.  I want to

9      thank you on behalf of the parties, on behalf of the

10     Court, and on behalf of the United States for your

11     service.

12             And you're now discharged, and all my

13     instructions about not thinking about the case or

14     making -- I didn't say not to think about the case,

15     not talking about the case, and not making up your

16     mind, obviously, are lifted.

17             If you Folks are willing to wait a few

18     minutes, I would like to come back and thank you Folks

19     personally.  But you are discharged with the gratitude

20     of the Court.  You may leave.  I will be back in a few

21     minutes.

22             A JUROR:  Does that mean we can or cannot

23     discuss the case?

24             **THE COURT:**  You can discuss it all you want.

25             (Jury was excused at 11:23 a.m.)

1           **THE COURT:**  Okay.  I plan to write on this.

2    I plan to write, issue a written decision.  I will do

3    that as quickly as I can.  But I plan to issue a

4    written decision because I think this is something

5    that deserves -- deserves to be addressed in writing.

6    It is something that is exceedingly rare, and should

7    be exceedingly rare.  It's reserved for only

8    extraordinarily unusual circumstances.  I would say

9    unique, but unique is over used.  But extraordinarily

10   unusual circumstances, which I find these

11   circumstances to be.  So I plan to write.

12           Anything further from the Government?

13           **MR. ANTOINE:**  Nothing further, Judge.

14           **THE COURT:**  Anything further from the

15   Defense?

16           **MS. KUBIAK:**  No, Your Honor.

17           **THE COURT:**  Okay.  Thank you.

18           **DEPUTY CLERK:**  All rise.

19               (The proceeding concluded at

20               a time of 11:24 a.m.)

21                   *   *   *

22

23

24

25

1                    **CERTIFICATE OF REPORTER**

2

3              In accordance with 28, U.S.C., 753(b), I

4     certify that these original notes are a true and

5     correct record of proceedings in the United States

6     District Court for the Western District of New York on

7     November 8, 2021.

8

9

10

11

12

13

14     --------------------------------------

15              SUSAN M. RYCKMAN, C.P.,

16              Notary Public.

17

18

19

20

21

22

23

24

25